WALTER M. LOVELAND & another *vs.* SAMUEL R. BURKE.

Middlesex.   Jan. 11. — March 4, 1876.   COLT & ENDICOTT, JJ., absent.

It is competent for a common carrier, in defence of an action for injury to goods, in their delivery, by the breaking of the requisite apparatus, to show a local usage that such apparatus is to be furnished by the consignee of the goods; and, if such usage is shown, the carrier is not liable for injury to the goods, occasioned by a latent defect in the apparatus furnished by the consignee.

A common carrier, having a hogshead of molasses to deliver, was furnished by the owner with skids wherewith to unload it from his wagon. The skids, owing to

a latent defect, broke under the weight of the hogshead, and the contents thereof were lost. *Held*, that the owner could not maintain an action against the carrier for the loss.

CONTRACT against a common carrier between Boston and Somerville, to recover the value of a hogshead of molasses.

At the trial in the Superior Court, before *Rockwell*, J., it appeared that the plaintiffs employed the defendant to transport a hogshead of molasses from Boston to their grocery store in Somerville; that the defendant did transport it in his wagon to Somerville at a point near their store; that the plaintiffs then directed him to unload it to and upon the piazza of the store; that he backed his wagon to within a few feet of the piazza, and skids or wooden supports were then placed from the piazza to the wagon; that then the parties undertook to roll the hogshead from the wagon to the piazza, and, when it was upon the skids between the wagon and piazza, one of the skids broke, which caused the hogshead to fall and its contents to be destroyed. It further appeared that the skids were furnished by the plaintiffs, and that the defendant requested the plaintiffs to furnish them, and that the breaking was attributable to the fact that a piece had been sawed out of the under side of the skid, which broke.

The defendant offered evidence tending to prove that it was the universal and well known custom and usage in Somerville and the suburban cities and towns for grocers to keep and furnish skids, whereon to remove heavy articles from common carriers' wagons to their grocery stores, and for carriers not to furnish skids, and that it was the plaintiffs' duty in this case to furnish the skids; also that the skids so furnished appeared to him to be suitable, and that the defect, which caused the accident, was not apparent, and in fact was not seen by him, and requested the judge to instruct the jury, " that if they should find that it was the duty of the plaintiffs to furnish proper skids upon which to receive the hogshead, and that they did furnish skids therefor, which appeared suitable to the defendant, he would not be required to make a critical examination of them, and would not be liable for an accident to said hogshead caused by a defect in them, which he did not see, and which was not ordinarily apparent."

The judge declined to instruct the jury in this form, but did rule and instruct them as follows : " The duty of the defendant was to deliver the hogshead safely on the premises of the plaintiffs, using proper means and instruments.  The mere fact (if it is a fact) that the usage is that grocers furnish the skids, does not alter the duty of the defendant to deliver the hogshead on the plaintiffs' premises.  The carrier, by that fact, and the other fact that the plaintiffs did furnish the skids at the request of the defendant, was not relieved of further duty after the hogshead passed upon the ends of the skids.  He was still bound to use proper care in the use of proper skids.  He had ro right to use insufficient skids, although the skids produced at his request were furnished according to usage by the plaintiffs.  He, the defendant, was still bound to use proper skids.  The plaintiffs were not warrantors that the skids were sufficient to carry the hogshead to the sidewalk on the plaintiffs' premises.  If there was a latent defect in the skids, known to the plaintiffs and not known to the defendant, and not observable by ordinary skilful observation before using, the defendant would not be liable.  The question as to usage, though of some importance, is not decisive of the case, but the previous considerations must also be regarded. The mere fact that the skids were furnished in compliance with usage by the plaintiffs does not alter the period when the delivery is completed.  The period of completed delivery by the carrier is the same, whether the skids are to be furnished by the plaintiffs or by the defendant."

The jury returned a verdict for the plaintiffs ; and the defendant alleged exceptions to the rulings and refusals to rule as requested.

*W. S. Stearns*, for the defendant.

*B. C. Moulton*, for the plaintiffs.

AMES, J.  The usage which the defendant attempted to prove was not unreasonable in itself, nor was it in contravention of any rule of law.  It was not an attempt to establish, for the purposes of this case, any special or peculiar rule of interpretation of terms, conflicting with their recognized and ordinary legal meaning.  It was offered merely to prove, as a matter of fact, that there was an established mode of doing a certain business in the locality where the parties reside, so well known to them as to

justify the conclusion, that they both expected and understood that the business, which the defendant undertook to do on this occasion, was to be done in that manner.   The defendant, upon receiving the goods for transportation, must be understood to have contracted to deal with them according to the regular, known and ordinary course of his business.  *St. John* v. *Van Santvoord*, 25 Wend. 660.   His liability to deliver them to the owner in person could be modified by contract, by general usage, or even by his own particular usage, if understood or known by the other party.  *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.* 18 Vt. 131.   The parties may make any agreement they please as to the time, place and manner of delivery, and in the absence of any express contract, the limits of delivery may be determined by a local usage.  *Barnes* v. *Foley*, 5 Burr. 2711.   Thus it has been held that a carrier may show a usage to deliver at certain stopping places only.  *Gibson* v. *Culver*, 17 Wend. 305.   A usage, so long established, uniform and notorious, as to justify the presumption that both parties knew it, becomes a part of the contract, and may determine when the transit is over, and what is a sufficient delivery.  That is to say, the extent of the transit may be matter resting altogether in proof ; and the course of business at the place of destination, and the usage of carriers at that place, may be controlling ingredients of the contract itself.  *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.* 23 Vt. 186.

The ruling given by the court as to the effect of the alleged usage, **if** proved, did not meet the exigencies of the case.  The jury should have been instructed that, if they were satisfied of the existence of a long continued, established and notorious usage for grocers, in that locality, to furnish the planks or wooden supports for unloading at their shops heavy articles from carriers' wagons, and if the damage in this instance was occasioned by defects in the appliances furnished for that purpose by the plaintiffs, especially if those defects were not so manifest that the defendant saw, or with reasonable attention would have seen them, the action could not be maintained.   A usage to furnish the skids must mean suitable and proper skids, capable with reasonable use of sustaining the weight of the articles which were to rest upon them.

But, independently of the question of usage, there is another difficulty in the plaintiffs' case which we find to be insurmountable. It may be conceded that the defendant's obligation to transport the goods to their place of destination included an obligation to unload and deliver them safely, and that ordinarily the transit is not at an end until such a delivery is accomplished. But the place and manner of delivery may always be varied with the assent of the owner of the property; and if he interferes to control or direct in the matter, he assumes the responsibility. *Lewis* v. *Western Railroad*, 11 Met. 509.

In the case at bar, it is expressly found that the plaintiffs, on the arrival of the goods, and at the request of the carrier, furnished the skids upon which he was to roll· the hogshead into their warehouse. He certainly had a right to suppose that they knew whether the skids were sufficient to support its weight. His duty was to deliver the article as the plaintiffs should direct. If the plaintiffs themselves took part in the delivery, and furnished the skids to be used in the process of unloading, it was equivalent to a direction to him to unload in that manner, or at least to a consent that he should do so. He is entitled to say that he has delivered the goods to the plaintiffs and in accordance with their directions; and it is little short of a legal solecism to say that he can be held responsible for the latent insufficiency of the unloading apparatus which they voluntarily furnished for his use. *Exceptions sustained.*