60    289
d82   157

ALDACE F. WALKER *et al.*, *as Receivers of the Atchi-son, Topeka & Santa Fe Railroad Company*, v. A. B. GREEN.

**No. 11107.**

RAILROADS — *Injury to Passenger* — *Contributory Negligence.*
A passenger on a freight-train who voluntarily and unnecessarily rides in a freight-car containing a horse and household goods which he is shipping over the line of road, instead of riding in the caboose attached to the train, which is provided for the accommodation of passengers, and who is injured by the negligent handling of the car, will be deemed guilty of contributory negligence, and the permission of the trainmen to ride in the freight-car will constitute no excuse for his act.

Error from Sedgwick district court; D. M. DALE, judge.   Opinion filed March 11, 1899.   Reversed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Rohrbaugh & Rauch,* and *Holmes & Haymaker,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. :   This was an action brought by A. B. Green against the receivers of the Atchison, Topeka & Santa Fe Railroad Company to recover damages for injuries received by him as a passenger on one of the company's trains prior to the appointment of the receivers.   A phase of the controversy recently came before us in another action.   (*Railroad Co. v. Green,* ante, p. 20, 55 Pac. 281.)   In that case it was held, construing the orders of the United States circuit court appointing and controlling the receivers, that they were liable notwithstanding the injuries were received previous to their appointment, and at a time when the company itself was in the operation of its

19—60 KAN.

line of road. The main case is now before us for consideration. The jury returned a verdict and special findings of fact in favor of the plaintiff, upon which judgment was rendered for him. The findings, aided in some particulars by the evidence, to which we have referred for a fuller understanding of the case, show the following facts : Green shipped a car containing a horse and household goods over the line of the railroad from Kansas City, Mo., to Caldwell, Kan. The car was loaded during the day, and the train started in the evening. A part of the agreement of shipment was as follows :

"RELEASE.—In consideration of the free transportation granted me by the Atchison, Topeka & Santa Fe Railroad Company for the purpose of accompanying the stock shipped on the within contract, and of being permitted to go in, over and about the cars in the train in which said stock is carried, and of being furnished return transportation free over said company's line to the point of shipment, as stipulated by the within company, we hereby release said company from all liability to us as to a passenger carried for compensation, assuming for ourselves all the risks of accident, injury or damage from any cause whatever while upon the trains or premises of said company in charge of said stock, and while being returned free to the point of shipment as aforesaid (if entitled to return transportation free as per rules printed below).

"Signed this 30th day of October, 1893.

"FRED. C. ADAMS, Witness.      A. B. GREEN."

The train was an ordinary one with a caboose or way-car attached for the convenience of the trainmen and passengers. Green did not ride in the caboose. He rode in the freight-car with his horse and household goods. He did so, as he said, in order to look after his property. Just before starting from Kansas City he was seen in this car by the train conductor

and station agent there, under circumstances reasonably indicating to them an intention on his part to ride in it.   It was not unusual, though not the rule, for men shipping household goods to ride in the car with them.   However, the trainmen on the train in question did not know that Green was in the car.   He did not surrender or exhibit his pass or contract of shipment.

The trip from Kansas City to Newton occupied about eighteen hours.   Upon arriving at the latter place the car containing the horse and goods was taken out of the train in which it had that far been brought, and was made up with other cars into a different train destined for Caldwell and other points south. In making up the new train in the yards at Newton, another car was bumped with considerable violence against the one containing Green and his property, so much so that the horse was thrown partly down, and some of the household goods moved or slid a foot or more along the car floor, and upon arrival at Caldwell a table and some kitchen utensils were found broken, supposedly as a result of the jar received by the bumping together of the cars at Newton.

The car in which Green rode was a grain-car with side doors constructed to slide upwards a certain distance on iron rods.   When raised to the proper height the lower part of the door could be pulled inward and raised up and fastened to the roof of the car by a hook.   Before the loading of the car at Kansas City, this door had been raised and the end of it hooked upwards as just described.   It was seen in that position by Green at the time of starting although he did not specially inspect it to see how it was fastened.   The mechanical device of raising, hooking up and lowering the door was very simple.   It could have been

readily comprehended by Green, and he could have easily unhooked and lowered the door had he desired. He placed a wagon-box in the center of the car between the two side doors. Inside this box he put a cot upon which he slept during the night, and sat, if he so desired, during the day. This cot was immediately beneath the hooked-up and overhanging door before described. At Newton the train on which Green had ridden was turned over to the yard workmen there, the men who had brought it from Kansas City leaving it in their charge. There was no evidence that any of the workmen knew that Green was in the car. In making up the new train the impact of the two cars mentioned caused the door to become unfastened and to fall, striking Green and injuring him, to recover for which this action was brought. It cannot be maintained.

Freight-cars are not designed for passenger travel, nor are they used for such except as the exigencies of particular cases require. A railroad company discharges its full duty to the public when it provides trains composed of passenger-coaches and puts cabooses to its freight-trains for the convenience of such passengers as have occasion to accompany their live stock or other property. It is not required in the management of its freight-trains, in making them up, in coupling its freight-cars together and in switching them about in its yards, to exercise that degree of care which is necessary in handling its passenger-coaches and trains, for the obvious reason that no passengers are supposed to be in its freight-cars. To hold railroad companies, as to passengers voluntarily and unnecessarily riding in their freight-cars, to the same degree of care required of them as to passengers in their regular coaches, or in their cabooses, would

·be preposterous. Carefulness is required of railroad companies, as of individuals, with relation only to that which may be injured or destroyed by the lack of it, and with relation to their knowledge of what has been committed to their care. With relation to passengers whom they have undertaken to transport, the highest degree of diligence which human skill and foresight can exercise is required of them; with relation to freight they have undertaken to transport, a less degree of care and prudence is exacted. For example, the receivers may be liable for the negligent handling of the cars in the yards at Newton which resulted in damage to the goods of the defendant in error, but they are not liable to him for the injuries he received, because he voluntarily exposed himself to the hazards of riding in a freight-car.

It is no sufficient answer to say that the trainmen knew the defendant in error was in the freight-car. In all probability they were unaware that he was in fact in it; nor were they bound by the usual course of their duty or their observation to know that he or other passengers would be liable to ride in such unusual place, but had they known him to be in the car the case would be nowise different. The increased dangers of riding in such car were as well known to him as to the trainmen, and their knowledge that he was exposing himself to the increased perils of such kind of passage, or their permission to him to do so, constitutes no justification for his act. He was of mature years and discretion, and needed no one to warn him against the hazards he was taking. He as well as they were charged with notice that freight-cars are not fit and safe vehicles for travel.

The principles applicable to this case have been heretofore declared by this court in *A. T. & S. F. Rld.*

*Co. v. Lindley*, 42 Kan. 714, 22 Pac. 703. In that case it appeared that a live-stock shipper was directed by the conductor to go upon the top of the train hauling his stock, so as to assist in watering it. He did so, and was injured by the negligent act of the engineer in violently bumping together detached portions of the train. It was ruled that riding upon the top of the cars was negligence upon his part, and also that the direction or request of the train conductor to do so constituted no excuse for his assumption of the risk. In the opinion by Chief Justice Horton many of the cases elucidating the. rules in question are cited and quoted. No cases involving a state of facts entirely like those under consideration have been called to our attention, but many of an analogous character are cited in Ray on Negligence of Imposed Duties, ch. viii. The rule collectible out of these cases fully supports the decision made in this case and in that of Lindley, *supra*.

It is true that the portion of the written contract of shipment made by the defendant in error recites that he was "permitted to go on, over and about the cars in the train in which said stock is carried." This, however, was not a permission to ride throughout the entire journey on other parts of the train than the caboose, but it was, as the language reads, a permission to go on, over and about the train, and was, of course, designed to enable him to make such inspections *en route* of his horse and other property as might be thought necessary to care for it properly. There was no occasion for him to ride continually in the car with his horse and household goods in order to care for them, nor does the contract of shipment presuppose a necessity for doing so, and therefore confer upon him a corresponding right. The demurrer to the evidence

of the defendant in error, plaintiff below, should have been sustained; so, likewise, judgment should have been rendered against him on the special findings of the jury. The judgment of the court below is reversed, with directions that these be done.