## WINTERS v. BALTIMORE & O. R. CO.

### (Circuit Court, S. D. Ohio, E. D. July 3, 1908.)

### No. 1,338.

**1. CARRIERS—INJURY TO PASSENGER—DERAILMENT—NEGLIGENCE—RES IPSA LOQUITUR.**

Proof that a passenger on a railroad train was injured by derailment is sufficient to establish a prima facie case of defendant's negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1288, 1307, 1311.]

**2. SAME—PLACE OF TRANSPORTATION.**

A passenger injured by derailment of the train, in order to recover, must show not only that he was a passenger, but that at the time of the accident he was also in a place where he had a right to be, or, at least, that the place where he was, if he was not in the right place, did not affect the result.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1399.]

**3. SAME—DUTY OF PASSENGER.**

It is the duty of a passenger, on boarding a train, to place himself in a safe position thereon, if he is able to find one, and it is no excuse for his placing himself in an unsafe position that the trainmen knew that it was unsafe and did not prevent his occupying it, if his danger was equally well known to him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1375.]

**4. SAME.**

The prima facie liability of a carrier for injuries to a passenger by derailment arising from the mere fact of the accident and the injury is conditioned on the exercise of reasonable care by the passenger.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1348.]

**5. SAME—CONTRIBUTORY NEGLIGENCE.**

Where the contributory negligence of a passenger injured by the derailment of a car of the train on which he was riding contributed to the injury, he was not entitled to recover, though his negligence did not contribute to the derailment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1346.]

**6. SAME—EVIDENCE.**

Plaintiff, a member of defendant's track repairing gang, was injured by the derailment of a car of the train on which plaintiff was being carried to his home by defendant after termination of the day's work. Defendant provided two box cars and a caboose in which to carry plaintiff and his fellow workmen, but plaintiff, in accordance with a prior custom, known to his foreman, climbed on top of one of the cars and rode there, and at the time of the derailment was either thrown or jumped to the ground, and sustained the injury complained of. No one else was injured, and if plaintiff had remained in the cars or caboose he would not have been injured. *Held*, that plaintiff was negligent as a matter of law, precluding a recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1375.]

## On Motion for Rehearing.

The plaintiff was a member of the defendant's floating gang engaged in track repairing, and, with about 20 other laborers and a foreman, on the evening of the accident in question, was proceeding homeward on the defendant's main track on a work train used in transporting laborers to and from their work, and consisting of an engine, a caboose, and two box cars. For the purpose of picking up a gang of Italian laborers who were working on a track leading to a brick plant, the work train about dusk was switched to such

track, and while backing toward the brick plant the rear truck of the rear car (the truck most remote from the engine) was derailed at a point where a driveway crossed the track. No other wheels of the train were derailed. The defendant had been engaged for some time in raising the track, and the plaintiff himself for two weeks or more had been employed off and on in that work. The road or driveway had been in use by those living in the vicinity of the brick plant, or doing business with them, since the construction of the plant some five or six years ago. Between the steel rails where the road crossed the track were some loose ties, rails, and planks, which had been taken out and thrown back, as circumstances required in the raising of the track. One of the planks had, from some unknown cause, gotten across one of the rails, and it was this that caused the derailment. The plaintiff, who was riding on top of the car, about its middle, either jumped or was thrown from it, and his right leg was caught by the wheels of the front truck of such car (the wheels of the car nearest the engine), and so mangled as to require amputation. The petition states that the train had a movement of two miles an hour, and that the plaintiff was thrown from the top of the car. He testified that the train was traveling at the rate of five or six miles an hour, and that he thinks he jumped from the car when the brakeman, on first seeing the plank, directed him to do so. There was no appreciable time between the discovery of the obstruction and the car's encountering it. He and the brakeman were both looking toward the west, while the train was moving in a northerly or northwesterly direction.

The plaintiff's uncontradicted evidence shows that the two cars in the train were camp cars supplied by the defendant and used for transporting its laborers and their tools to and from their work. One of the cars was provided for the plaintiff and his colaborers, and the other for the Italian workmen. The plaintiff had been riding in the caboose. At the switch he left the caboose, of his own accord, and voluntarily climbed on top of the car after the brakeman. His fellow laborers took their position in the car. There is no evidence that any one had ever directed him to ride on top of the car, but it had been his habit, when the foreman told the men to get aboard, to get on the train at any place, and he had previously, on different occasions, climbed upon and ridden on top of the car in the foreman's presence. Other laborers had also ridden on top of the cars. The conductor had seen him riding on top of the cars, and the brakeman was there with him at the time of the collision. He had no duty to perform there or in the operation of the train. It is not claimed that any other person on the train was injured, and in argument it was conceded that the plaintiff was the only one hurt. At the conclusion of plaintiff's evidence a verdict was directed for the defendant, and the case is now here on an application for rehearing. The shock of the collision was not great, as only the rear trucks of the one car left the rails. How far the train proceeded before stopping is not disclosed, but the plaintiff testified that it stopped when the trucks left the track.

F. S. Monnett and Geo. W. Bope, for plaintiff.
F. A. Durban and R. J. King, for defendant.

SATER, District Judge (after stating the facts as above). The defendant admits the derailment and the plaintiff's injury. These facts are prima facie proof of the defendant's negligence. Feital v. Middlesex R. R. Co., 109 Mass. 398, 12 Am. Rep. 720; Little Rock & Ft. Scott Ry. Co. v. Miles, 40 Ark. 298, 48 Am. Rep. 10; Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115. But notwithstanding this fact, the plaintiff, to recover, must show not only that he was a passenger, but that at the time of the accident he was also in a place where he had a right to be, or at least that the place where he was, if he was not in the right place, did not affect the result. It was his duty, in boarding the train, to place himself in a safe position thereon, if he was able to obtain such a position, and it was no excuse for his placing himself in

an unsafe position that the trainmen knew that it was unsafe and did not drive him therefrom, if his danger was equally well known to him. The prima facie liability of the defendant, arising from the mere fact of an accident and the plaintiff's injuries, is conditioned upon the exercise of reasonable care on his part. Tuley v. Chicago, B. & Q. Ry. Co., 41 Mo. App. 432.

In Little Rock & Ft. Scott Ry. Co. v. Miles, supra, it was said:

"There are certain portions of every railroad train which are so obviously dangerous for a passenger to occupy, and so plainly not designed for his reception, that his presence there will constitute negligence as a mattter of law and preclude him from claiming damages for injuries received while in such position. A passenger who voluntarily and unnecessarily rides upon the engine or tender, or upon the pilot or bumper of the locomotive, or upon the top of a car, or upon the platform, cannot be said to be in the exercise of that caution and discretion which the law requires of all persons who are of full age, of sound mind, and of ordinary intelligence."

In Kimball v. Palmer, 80 Fed. 240, 25 C. C. A. 394, the evidence was such as to justify sending the case to the jury; but the rule announced in the opinion is applicable to the case at bar, to wit:

"The effort of the plaintiff in attempting to get on the top of the box car next to the caboose, for the purpose of walking over the tops of the other cars to his car, was attended with manifest danger, especially as the train was in motion. Railroad Co. v. Lindley, 42 Kan. 714, 22 Pac. 703, 6 L. R. A. 646, 16 Am. St. Rep. 515. Nothing could justify the attempt except its necessity. It is the duty of the carrier to carry his passengers safely. It is equally the duty of the passenger (a reasonable being) to avoid all unnecessary risks. Hickey v. Railroad Co., 14 Allen (Mass.) 429. 'A man is guilty of culpable negligence when he does or omits to do an act that an ordinarily prudent person in the same situation, and with equal experience, would not have done or omitted to do, or when he voluntarily exposes himself to a danger which there was no occasion for him to incur in the proper discharge of his duty.' Railway Co. v. Carpenter, 12 U. S. App. 398, 5 C. C. A. 554, and 56 Fed. 454. * * * Nothing would justify a person in getting upon and passing over the tops of the cars while in motion, unless it was the usual method (perhaps, the only method) by which the separate cars could be reached."

In Atchison, Topeka & Santa Fé Ry. Co. v. Lindley, 42 Kan. 714, 22 Pac. 703, 6 L. R. A. 646, 16 Am. St. Rep. 515, an instructive case, a shipper of stock on a freight train, to which was attached a caboose in which the shippers on the train were to ride, in response to a direction from the conductor to get on top of the train and help signal, voluntarily obeyed the order, got upon a backward moving train, and while on top of it near the end of the car, watching the brakeman trying to make a coupling, was severely injured by a sudden forward motion or jerk of the train without any signal being given. It was held that as he voluntarily placed himself in a position of known danger, and was not on top of the train to look after or care for his stock, the defendant was not liable in damages for his injury, in the absence of such gross negligence as amounted to wantonness on the part of the employés in charge of the train.

In Ft. Scott, Wichita & Western Ry. Co. v. Sparks, 55 Kan. 288, 39 Pac. 1032, it was held that standing or walking upon the top of a moving train is obviously dangerous; and Elliott on Railroads, § 1632, announces that "it would seem that to ride upon the cowcatcher or pilot of an engine is clearly contributory negligence, as a matter of

law," and then adds that the same rule applies to riding on top of a car. Other authorities in point are Railroad Co. v. Green, 60 Kan. 289, 294, 56 Pac. 477, and Gross, Adm'r, v. South Chicago City Ry. Co., 73 Ill. App. 222.

Inasmuch as the plaintiff voluntarily and without necessity left the caboose, and instead of taking his place in the camp car, which had been provided for his transportation, without any occasion for so doing, climbed on top of the car, where the danger was obvious and greater than in either the caboose or the camp car, which greater danger he was not intended to assume, and of which he had knowledge, he should be held to have assumed whatever increased risk of injury he incurred by so doing, and cannot hold the defendant as a carrier liable for the injuries received by him while in such exposed condition. Chicago, St. P., M. & O. Ry. Co. v. Myers, 80 Fed. 361, 25 C. C. A. 486; Elder Dempster Shipping Co. v. Pouppirt, 125 Fed. 732, 60 C. C. A. 500; Files v. Boston, etc., R. R. Co., 149 Mass. 204, 21 N. E. 311, 14 Am. St. Rep. 411; Labatt on Master & Servant, § 334. Had he remained inside the caboose in which he had been riding, or rode in the camp car, as did his fellow workmen, which had been provided for his transportation, he would not have been injured.

In Peoria & Rock Island R. R. Co. v. Lane, 83 Ill. 448, it appears that a passenger, without the direction of the company, left his seat in a passenger coach, and went into the baggage car, where he was killed by its being overturned on account of some defect in the construction, maintenance, or locking of a switch. Had he remained in the passenger car, where there was an abundance of room, he would not have been killed. Having of his own motion left the place intended for him for one of greater danger and not designed for him, he was held not to have exercised ordinary prudence, and to have been guilty of such a high degree of negligence as to exonerate the company from liability, in the absence of wanton or reckless conduct on its part.

Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506, presents a case in which a laborer, like the plaintiff, engaged in constructing and repairing a roadway, was provided with a box car for transportation to and from the place where his services were required. On returning one evening from his labor, he rode on the pilot or bumper of the locomotive, although previously forbidden to do so and warned of the danger of so doing. While so riding he was injured by a collision with other cars standing upon the track. There was ample room for him in the box car, and no one therein was hurt. He was denied a recovery because he had not used ordinary care and caution, and the knowledge or assent or direction of the agents of the company as to what he did at the time in question was held immaterial. Mr. Justice Swayne, in deciding the case, said:

"The plaintiff had been warned against riding on the pilot, and forbidden to do so. It was next to the cowcatcher and obviously a place of peril, especially in case of collision. There was room for him in the box car. He should have taken his place there. He could have gone into the box car in as little, if not less, time than it took to climb to the pilot. The knowledge, assent, or direction of the company's agents as to what he did is immaterial. If told to get on anywhere, that the train was late, and that he must hurry,

this was no justification for taking such a risk. As well might he have obeyed a suggestion to ride on the cowcatcher, or put himself on the track before the advancing wheels of the locomotive. The company, though bound to a high degree of care, did not insure his safety. He was not an infant, nor non compos. The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter, the former could not arise. He and another who rode beside him were the only persons hurt upon the train. All those in the box car, where he should have been, were uninjured. He would have escaped, also, if he had been there. His injury was due to his own recklessness and folly. He was himself the author of his misfortune. This is shown with as near an approach to demonstration as anything short of mathematics will permit."

In Doggett, Adm'r, v. Illinois Central R. R. Co., 34 Iowa, 284, the plaintiff's decedent, a railroad employé not engaged in operating the train on which he was riding, voluntarily got upon the tender of the engine to ride, and while there the engine broke through a defective culvert or bridge, and he was killed. A caboose was attached to the train for the carriage of passengers and those not engaged in operating the train. It appeared that, if the deceased had been in the caboose, he would not have been injured. It was held he was guilty of contributory negligence, and that his administrator could not recover.

In Little Rock & Ft. Scott R. Co. v. Miles, supra, it was said:

"The test of contributory negligence is: Did that negligence contribute in any degree to produce the injury complained of? The jury found that a passenger car was attached to the train, in which plaintiff was at liberty, if he had chosen, to ride, and that he would not have been injured if he had taken a seat in it. This is conclusive against the right of recovery, unless the directions of the station agent for him to ride on the cattle car alters the case."

The same test, applied to the case at bar, necessitated the direction of a verdict for the defendant.

The plaintiff contends that he was not guilty of contributory negligence because no fault of his produced the derailment, and that his being on top of the car did not cause, or tend to cause, such derailment or negligent act of the defendant. The contention is based on a misconception of what constitutes contributory negligence. He was guilty of contributory negligence if he contributed, not to the derailment, but to the injury of which he complains. It is the concurrence or co-operation of the negligence of the plaintiff with the negligence of the defendant in producing his injury that defeats the plaintiff's right to a recovery. In Plant Inv. Co. v Cook, 74 Fed. 503, 20 C. C. A. 625, the definition of "contributory negligence" announced in 1 Beach on Negligence, § 7, is adopted, as follows:

"Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of. To constitute contributory negligence, there must be a want of ordinary care on the part of the plaintiff, and a proximate connection between that and the injury. Perhaps, besides these two, there are no other necessary elements. Certainly they are the two points of difficulty in the consideration of the question."

See, also, Schweinfurth, Adm'r, v. Railway Co., 60 Ohio St. 215, 54 N. E. '89.

In Coal Co. v. Estievenard, 53 Ohio St. 43, 57, 40 N. E. 725, 728, it was said:

"To warrant a recovery, it must appear that the injury was caused by the want of ordinary care on the part of the employer, and the injury is not so caused, when it is caused by the want of ordinary care on the part of the employer combined with the want of ordinary care on the part of the employé. If it took the want of ordinary care of both the employer and the employé to produce the injury, both are at fault, and there can be no recovery by either. Where both parties are negligent, and the injury is caused by such combined negligence, there can be no recovery by either party."

The rule is well settled that, where a motion is made to direct a verdict, the court must take that view of the evidence most favorable to the party against whom the instruction is requested. The plaintiff was entitled to receive the benefit of all fair and reasonable inferences from the testimony. Detroit Southern R. Co. v. Lambert, 150 Fed. 555, 80 C. C. A. 357. There is no rule better established in the federal courts "than that which permits a presiding judge to direct a verdict in favor of one of the parties when the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different verdict. It is clear that, where the court would be bound to set aside a verdict for want of testimony to support it, it may direct a finding in the first instance, and not await the enforcement of its view by granting a new trial." McGuire v. Blount, 199 U. S. 142, 26 Sup. Ct. 1, 50 L. Ed. 125; Empire State Cattle Co. v. Atchison Ry. Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931.

Under the circumstances of this case, the verdict was, in my judgment, properly directed.

Motion for new trial overruled. Judgment on verdict.