# PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* HALL.

[No. 6,538.   Filed January 13, 1910.   Rehearing denied May 10, 1910.   Transfer denied June 28, 1910.]

1.   RAILROADS.—*Duty to Consignee's Servants.—Licensees.—Invitation.—Contracts.*—Where the servant of a glass company was engaged in unloading· a car in the enclosed yard of such glass company, and defendant railroad· company in switching other cars was compelled to move the car that was being unloaded, and the servant, in accordance with a custom known to the railroad company's local employes, and unknown to the glass com-

pany or to the railroad company's contracting officers, remained in the car while it was being switched and was injured by the negligence of the railroad company's engineer, such railroad company is not liable, the servant's ride being for his own convenience and pleasure and not for the benefit of either company. pp. 223, 226, 229.

2.  NEGLIGENCE.—*Duty.*—Liability for negligence arises only from the breach of a duty. p. 224.

3.  RAILROADS.—*Trespassers.—Licensees.*—Railroad companies are liable to trespassers and bare licensees only for wilful injuries. p. 224.

4.  RAILROADS.—*Licensees by Invitation.—Duty.*—A railroad company that has invited, expressly or impliedly, a person to come upon its grounds, is liable for its failure to exercise ordinary care toward him. p. 224.

5.  RAILROADS.—*Riding on Freight Trains.—Invitation.*—A railroad company is not liable to a person negligently injured while riding upon one of its freight trains, where he was invited so to do by a person having no authority to invite him. p. 225.

6.  RAILROADS.—*Licensees.—Invitation.—Inferences.*—An invitation to enter, or remain, upon railroad premises is implied, where the licensee's presence is of mutual interest or advantage to the company and the licensee, but is not inferred when his presence is for his sole pleasure or benefit. p. 225.

7.  RAILROADS.—*Violation of Rules.—Custom.*—A railroad company may assume that its rules will be complied with by its servants, and notice of a custom in opposition to its rules will rarely be presumed, based upon the disregard or violation of rules by faithless servants. p. 225.

8.  RAILROADS.—*Freight Trains.—Dangers.—Presumptions.* — Every one is presumed to know that riding upon a freight train is dangerous, especially when the cars are being switched. p. 226.

9.  CARRIERS.—*Railroads.—Shipments. — Contracts. — Delivery. — Custom.*—Contracts of shipment may be oral, and the time, place, and manner of delivery may be fixed therein, or the manner of delivery may be regulated by custom. p. 226.

10.  CARRIERS.—*Contracts.—Parties.—Train Crews.*—Unless specially authorized, train crews cannot contract for the transportation of freight. p. 227.

From Howard Circuit Court; *James F. Elliott,* Judge.

Action by Millard F. Hall against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment on a verdict for the plaintiff for $1,800, defendant appeals. *Reversed.*

Pittsburgh, etc., R. Co. *v.* Hall—46 Ind. App. 219.

*John L. Rupe* and *Bell & Purdum,* for appellant.
*Blacklidge, Shirley & Wolf,* for appellee.

HADLEY, J.—The facts upon which appellee's alleged cause
of action is predicated are that on and prior to June 12,
1903, the Pittsburg Glass Company operated a large manu-
facturing plant at Kokomo, and in connection with its plant
had yards with a number of railroad tracks laid therein,
which yards were enclosed by a high fence and entered
through a gateway, which was kept closed and locked when
not in use.    The keys to the gateway were in the possession
of appellant.    All of these tracks were laid, owned and used
exclusively by appellant, said tracks having been placed
there by consent of the glass company.    Said tracks were
used exclusively by appellant in delivering freight to, and
receiving freight from, said glass company.    Said tracks
were connected with the tracks of appellant outside the en-
closure.    The glass company had a foreman who gave orders
to the switching crew of appellant as to the switching of cars
upon the tracks, or shifting them about.    Appellee was never
in the service of appellant, but was a servant of the glass
company at the time of the injury complained of.    On June
12, 1903, a box-car, loaded with crushed stone, had been set
on one of the tracks in the yards of the glass company, and
opposite a building called a "stone-house," belonging to said
glass company.    Appellee, with other employes of the glass
company, was engaged in unloading said stone from the car,
using a chute extending from the car into the stone-house for
that purpose.    While this work was in progress, and when
the car was partially unloaded, the foreman of the glass com-
pany directed the switching crew of appellant to switch out
some loaded cars, which were behind the car that was being
unloaded and on the same track.    To comply with this order
it was necessary to suspend the work of unloading the stone-
car and connect it with the loaded cars, switch them all out
together onto the main tracks, and then switch the stone-car

back to its original position. Before beginning the switching, appellant's crew went to the stone-car and notified appellee and the men engaged with him in unloading the car to take down the chute, and that they were going to switch out said stone-car. Pursuant to this notice, the men in the stone-car stopped their work, took down the chute and some of them got out of the car. The others, appellee being one of the number, of their own choice and volition, and for their own convenience, and without any necessity therefor, remained in the car to ride while it was being switched. During the switching, the car was stopped several times, and ample opportunity was afforded appellee and his companions to get out of the car, if they had so desired. During the switching, appellee stood upright in the car, holding by one hand to an iron rod above his head. The car in which appellee was riding was necessarily pulled out of the yards, switched back, and sent down another track into said yards, and in so doing it was sent down with such velocity that it bumped into some loaded cars with such force as to jerk appellee so as to dislocate his shoulder and otherwise injure him. At the time of his injury, and for a long time prior thereto, there was a rule of appellant prohibiting persons from riding on or in freight-cars, which rule applied to switching yards as well as the main track. It is admitted that the car was sent down the track at a greater velocity than was necessarily required in the performance of the work appellant was attempting to do, but with no greater force than was ordinarily used in doing such work. It is also clearly shown that it had been a custom, extending over a period of twelve years, for the employes of the glass company, when unloading a car, as appellee was doing, and when it was switched, as was done in this case, to remain in the car during such switching, if they so desired. And this was done with the knowledge of the switching crew moving said cars. It was shown that this custom was not at the request of the glass company, or of

anyone else, but was purely a voluntary act on the part of the employes. It was shown that none of the officers of appellant company knew of such custom, and it was not shown that any agent or employe of appellant had knowledge or notice of said custom, except said switching crews.

The complaint averred substantially the foregoing facts. The complaint was demurred to and the demurrer overruled. This ruling is assigned as error. Upon verdict for appellee, a motion for a new trial was filed, which was overruled. This is assigned as error.

The question presented upon the complaint, upon various instructions, and upon the evidence, is narrowed down to the single question as to whether, under the foregoing facts, there is a liability upon the part of appellant for the injury shown to have been committed. Appellant contends that appellee was nothing more than a licensee and as such was not entitled to any protection at the hands of appellant, except as against wilful injury. It is admitted by appellant that if a greater duty was owing to appellee than as here stated, then the judgment should be affirmed. On the other hand, appellee contends that he was more than a licensee; that he was an employe of the consignee engaged in the work of the consignee when injured; that by reason of the long-continued custom of the manner of unloading the cars and of the employes in riding in said cars during the time they were being switched, it became so fixed that it became a part of the contract of shipment; and therefore when appellant delivered a car to the glass company it delivered it upon the contract that the glass company not only would be permitted to unload the car at the place it was delivered, but that, in case it became necessary to move said car before it was unloaded, the employes of the company would be permitted to remain in the car during said moving and until the car was reset at the point of delivery.

The question thus presented is a new one, and the long

line of decisions and authorities to which we have been cited by appellant, and those, in addition, which we have examined in an independent investigation, as well as the decisions cited by appellee, have been found to have little direct application to this exact question. From these authorities, however, we have been able to deduce some general principles which aid us in arriving at a proper conclusion.

It is fundamental that before there can be a liability for a negligent injury, there must be a legal duty owing from the party committing the injury to the party injured. *Toledo, etc., R. Co.* v. *Hauck* (1893), 8 Ind. App. 367; *Stalcup* v. *Louisville, etc., R. Co.* (1897), 16 Ind. App. 584; *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. App. 530, 58 Am. Rep. 65.

Numerous decisions hold that a railroad company owes no higher duty than to avoid any affirmative, wrongful act or wilful injury to trespassers or licensees upon its right of way, tracks or cars. *Stalcup* v. *Louisville, etc., R. Co., supra; Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308; *McCabe* v. *Chicago, etc., R. Co.* (1894), 88 Wis. 531, 60 N. W. 260. But where one is on the right of way, depot grounds, tracks or cars by invitation, express or implied, of those authorized to extend it, the company owes to him the duty of exercising ordinary care, and will be liable for an injury negligently inflicted upon him. *Chicago, etc., R. Co.* v. *Martin, supra; Toledo, etc., R. Co.* v. *Hauck, supra; Newson* v. *New York Cent. R. Co.* (1864), 29 N. Y. 383; *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 2 Am. Rep. 193; *Baltimore, etc., R. Co.* v. *Trennepohl* (1909), 44 Ind. App. 105; *Booth* v. *Union, etc., R. Co.* (1904), 126 Iowa 8, 101 N. W. 147; *Wright* v. *London, etc., R. Co.* (1875), L. R. 10 Q. B. 298; *Street Railway Co.* v. *Bolton* (1885), 43 Ohio St. 224, 1 N. E. 333, 54 Am. Rep. 803; *Eason* v. *S. & E. T. R. Co.* (1886), 65 Tex. 577, 57 Am. Rep. 606.

An invitation to ride on a freight-train, given in contra-

vention of the rules of the railroad company, by an employe engaged in operating such train, will not render the company liable for a negligent injury to a person accepting such invitation, unless it is shown that the person extending the invitation was authorized by the company to do so. *Pennsylvania Co.* v. *Coyner* (1904), 163 Ind. 631; *Stalcup* v. *Louisville, etc., R. Co., supra; Downey* v. *Chesapeake, etc., R. Co.* (1886), 28 W. Va. 732; *Cooper* v. *Lake Erie, etc., R. Co.* (1894), 136 Ind. 366; *Lygo* v. *Newbold* (1854), 24 L. & Eq. 507; *Eaton* v. *Delaware, etc., R. Co.* (1874), 57 N. Y. 382, 15 Am. Rep. 513.

In determining whether certain acts imply an invitation or a license, the following rule is laid down in *Chicago, etc., R. Co.* v. *Martin, supra,* quoting from Campbell, Negligence §33: ''The principle appears to be that that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.'' In *Hargreaves* v. *Deacon* (1872), 25 Mich. 1, it is said: ''We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in noway connected with business or other relations with the occupant.'' Quoted with approval in Beach, Contrib. Neg. (2d ed.) p. 74.

A railroad company is not required to maintain a constant surveillance over its employes to ascertain whether its rules are complied with. It has the right to assume that they will be. And it is seldom, if ever, that notice to the company of an habitual disregard of its rules and sanction thereof or acquiescence therein can justly be presumed, merely from evidence of such disregard or violations, or permission therefor by complacent or faithless servants. *Pennsylvania Co.* v. *Coyner, supra.*

Riding on freight trains is hazardous, and every one is

presumed to know and appreciate this fact. *Pennsylvania Co.* v. *Coyner, supra; Walker* v. *Green* (1899), 60 S. Kan. 289, 56 Pac. 477; *Louisville, etc., R. Co.* v. *Bisch* (1889), 120 Ind. 549. One of the hazards of riding on a freight-train, that every person of common intelligence is presumed to know, is the sudden bumping or jerking of the cars. *Louisville, etc., R. Co.* v. *Bisch, supra.*

This is the rule with regard to the running of such trains on the road in the ordinary way. The rule should apply with greater force to cars that are being switched back and forth. It is well settled that one who voluntarily assumes a dangerous position, after notice or knowledge of the danger in ample time to secure a safe place, cannot recover for an injury by reason of being in the dangerous position thus assumed. *Louisville, etc., R. Co.* v. *Bisch, supra; Walker* v. *Green, supra; Downey* v. *Chesapeake, etc., R. Co., supra.*

Appellee contends that his right to remain in the car was contractual. It is true that the contract of shipment may be oral. It may even be implied, and the parties may make any agreement they please as to the time, place and manner of delivery, and such manner of delivery may be shown by proof of usage and custom. *Loveland* v. *Burke* (1876), 120 Mass. 139, 21 Am. Rep. 507.

In this case it must be borne in mind that the place of delivery and shipment was in the private yards of the glass company, separate and apart from the office of the agent of the company and the public stations and delivery points of said company. It must also be borne in mind that the custom of remaining in the cars while they were being switched, existing among the employes of the glass company, was one in which neither the glass company nor the railroad company had any beneficial interest or concern whatever. It is not shown that it in any way aided the employes, or expedited their work in unloading the cars, or in any manner assisted the railroad company in switching. On the contrary, it is apparent that if, by reason of their re-

maining in the car, the railroad company was compelled to exercise care in shifting and shunting the cars, it would not only be a detriment to their work but would be imposing a responsibility and liability upon the railroad without any compensation or return whatever.

It was not shown that the glass company had any knowledge of this custom, that it desired it or requested it, but it is affirmatively shown that it was a custom indulged in by the employes, purely for their own pleasure or convenience. Furthermore, it is not shown that any agent of the railroad company, who had authority to make contracts for said company, had any knowledge of such custom. In fact, it is only shown that the switching crews of the railroad had knowledge of such custom. Being a custom confined exclusively to the private yards of the glass company, we do not think it can be presumed, even by reason of its long continuance, that the authorized agents of the company had knowledge of such custom. It is not the business of train crews to make contracts for the railroad company, and they can only do so in cases of emergency, unless specially authorized. Ordinarily they can make no contracts for shipping freight or for carrying passengers. *Cooper* v. *Lake Erie, etc., R. Co.* (1894), 136 Ind. 366; *Stalcup* v. *Louisville, etc., R. Co., supra.*

It is affirmatively shown that there was nothing in the car, nor in the character of the load remaining in it, that required appellee to remain in the car to protect it or to guard it while the car was being switched, and in this respect the case is distinguished from the case of *Chadderdon* v. *Michigan Cent. R. Co.* (1894), 100 Mich. 293. In that case plaintiff was loading grain seeders into a car. The car was partially loaded and the seeders therein were not braced. Defendant knew that plaintiff was in the car, and knew the business that kept him there. It was necessary for him to remain in the car properly to protect and support the seeders in position while the car was being moved. The car was kicked

back with such force as to precipitate the seeders upon plaintiff, and injure him. The court, in passing on the case, held that, under the circumstances, plaintiff's negligence was not so clear as to justify the taking of the question from the jury, and, in the course of the opinion, said: "The plaintiff was in the discharge of his duty to his employer in staying in the car, and looking after the seeders; and, whether he had the consent of the agents of the defendant company or not, they were apparently aware he was in the car, and knew the business which kept him there. They knew the seeders were not fully braced. He had a right to expect, under the circumstances, that the defendant would exercise some care in returning the car to its place. * * * The question of the plaintiff's negligence was properly submitted to the jury."

Counsel for appellee rely upon the case of *Montgomery, etc., R. Co.* v. *Kolb & Hardaway* (1882), 73 Ala. 396, 49 Am. Rep. 54. In that case the railroad company had given printed directions as to how cotton would be received at Eufaula for shipment. These printed instructions were delivered to the shippers, but the agent at Eufaula had permitted a usage to grow up that delivery would be made in a way different from that prescribed in the circular. It was contended that knowledge of this usage was not shown to have been traced to the superintendent of the company, and therefore the company was not bound thereby. The court, however, said that since the railroad company had placed an agent there for the purpose of dealing with shippers, receiving freight and discharging it, as the representative of the railroad company, therefore "whatever regulation, custom or usage such station agent adopts, or permits to be adopted, the public must either conform to, or will feel itself justified in conforming to. The rules observed by shippers in their general transactions, if continuous or frequent, although not universal, grow into a usage, which would author-

ize others to treat it as the proper rule, and as an element of the contract of affreightment.''

We think that no one will contend that switching crews are ordinarily clothed with authority to make contracts binding upon the railroad company for the shipment or delivery of freight; and it would certainly be a harsh rule that would hold the railroad company responsible for an injury arising from a custom that was originated and established in the privacy of enclosed switching yards of a manufacturing company, simply on the presumption that the authorized officers of the company had knowledge of such custom.

Furthermore, there is a principle laid down in the case of *Loveland* v. *Burke, supra,* which precludes the recovery of damages by appellee. The rule is so clearly laid down in that case that we quote from it: ''It may be conceded that the defendant's obligation to transport the goods to their place of destination included an obligation to unload and deliver them safely, and that ordinarily the transit is not at an end until such a delivery is accomplished. But the place and manner of delivery may always be varied with the assent of the owner of the property; and if he interferes to control or direct in the matter, he assumes the responsibility.''

Appellee, in oral argument, specifically admitted that if the finding of this court should be against him upon the question of his contractual right to be in the car, then his cause should fail. The complaint is insufficient and the demurrer thereto should have been sustained; and the evidence does not support the verdict.

Judgment reversed, with instructions to sustain the demurrer to the complaint, with leave to amend.

## On Petition for Rehearing.

HADLEY, J.—Appellee, in his petition for a rehearing, earnestly insists that we do not fully comprehend his position in this case, and the force of his contention that he relied upon his contractual rights for recovery. In this he is mistaken. We fully understood his position, and the purpose of our discussion of the right of the switching crew and train crew to make contracts for the company was to show that the proof of a custom, extending though it did over a long period of years, that was maintained within the private shipping yards of the consignee, wholly separate and apart from the main line and switch yards and freight and shipping offices of appellant, and known to the switching crew, who had no authority to make any contract for appellant, and which was unknown to either appellant or the consignee, was not proof that such custom became a part of the contract of shipment. To show that it was a part of such contract that appellee, as an employe of the consignee, should have the right, while unloading the car, to ride on said car while it was being switched, he must show that appellant had knowledge, either constructive or actual, of the existence of the custom permitting him to do so, and such knowledge could not be shown by merely proving that a switching crew, that had no authority whatever to make contracts for the company, knew of such custom, under the circumstances before enumerated.

Petition for a rehearing denied.