ROBERTSON *v.* COMMERCIAL TELEPHONE COMPANY, ET AL.

[No. 14,174. Filed April 1, 1932. Rehearing denied July 28, 1932. Transfer denied February 22, 1933.]

*Eggeman, Reed & Cleland, James P. Murphy* and *Snouffer & Murphy,* for appellant.

*James L. Murray, Brubaker & Rockhill, William P. Evans* and *J. Edward Headley,* for appllees.

LOCKYEAR, J.—The appellant filed a complaint against the appellees, which, in substance, alleges that in the city of Warsaw, Indiana, is a public highway known as North Detroit Street, which runs in a general northerly and

southerly direction; that immediately east of said street there is an electric railroad owned by the Winona Railroad Company; that the cars on said railroad are operated by electric power which is furnished to said railroad company by the appellee, the Interstate Public Service Company, which company had installed on said right of way a line of wooden poles upon which was strung bare uninsulated wires which carried a high and dangerous current of electricity; that beneath said uninsulated wires there were feed wires running to the trolley wires over the railroad track.

That crossing beneath said wires, the appellee, the Commercial Telephone Company, had installed and maintained a line of wooden poles strung with four or more copper wires directly beneath the uninsulated wires of said power company at a distance of four or five feet.

That on April 8, 1926, the appellant was in the employ of a contractor who was then engaged in remodeling or constructing certain buildings for and in behalf of the railroad company, which company was then changing its tracks and switches on the right of way and was installing additional tracks, which work made it necessary for the telephone company to change the location of its poles and wires, which the telephone company was then and there engaged in, by removing, replacing and resetting certain of its poles and wires.

The appellant alleges that on said April 8, 1926, he reported to work to his employer and was informed that work that he did was suspended for that day, whereupon he proceeded to return to his home, and for that purpose he walked from said place of employment over said right of way and came to the place where the agents, servants and employees of the telephone company were making the changes aforesaid; that he stopped to talk to some of the employees, and while so engaged was expressly invited by them to assist in the work then being done; that

said express invitation was extended to this appellant by one Buster Brown, employee of said telephone company, who was charged with the duty of stringing and supervising the work of changing the wires of said telephone company, and while he was acting in the scope of his said duties; that said invitation was made in the presence and hearing of one Reuben Mann, who was at the time general foreman in charge of all work, and in charge of all employees and servants of the telephone company, and who had general charge and control of all the work then being done. That said foreman acquiesced, sanctioned and approved said invitation and acting within the scope of his employment and duties, and in furtherance of said invitation so extended, furnished this appellant with all necessary tools, appliances and equipment; that said appellant accepted said invitation and in obedience thereto, and with the knowledge, consent, acquiescence and approval of said telephone company, and in order to hurry and facilitate the completion of said work, and in order that appellant's work and that of his employer which had been suspended as aforesaid be resumed, the following day, proceeded to aid and assist the appellee telephone company, and at all times acted in the discharge of his work pursuant to the orders and instructions given by the employees aforesaid regarding said work.

He then alleged he climbed up one of the telephone poles in the performance of his work and knelt on the cross arms attached to said poles, and without the knowledge of the closeness and proximity of the uninsulated wires of the power company, and without the knowledge of their dangerous character, attempted to descend from the top of said pole, started to raise his body to obtain a firm hold and secure position and while so doing the high and dangerous current of electricity in said wires in some manner passed into his body and that he was thereby violently

thrown from the pole to the ground and he was injured as set out in the complaint.

Negligence is charged in that the telephone company did not inform the appellant of the dangerous character of the wires of the Public Service Company in permitting him to work in the proximity of the uninsulated high tension wires without having the current removed, and that no precaution was taken to avoid the escape of the current from said wires. The Public Service Company is charged in being negligent in not insulating said wires and in not installing a protector or basket or some means to afford protection to those lawfully working upon the poles, and that said Public Service Company was careless and negligent in not insulating their wires and protecting those working in close proximity of their wires.

The work of the appellant was without remuneration or promise thereof.

The appellants each filed separate demurrers to the complaint on the ground that said complaint does not state facts sufficient to constitute a cause of action. The telephone company, in its memorandum, alleges that it is not negligent for the telephone company to maintain a line of telephone wires 4 or 5 feet below the lines of the service company. Second, the complaint shows the appellant was a mere volunteer to whom the telephone company owed no duty except not to willfully or purposely injure the appellant. Third, the complaint shows that the appellant was not invited to work by any person or persons who had the authority to extend such invitation. Fourth, no emergency is shown to exist for the appellant to engage in such work. Fifth, there are no facts shown in the complaint that the appellant's employer informed him that the work was being held up, neither that the appellant's employer requested the appellant to assist in the telephone work, or knew of such acts being rendered. Sixth, there is no showing that the telephone company did

not have a sufficient force of men on the job to complete the work within the time, or that said telephone work would be delayed. Seventh, there is no showing that the appellant's employer could resume his work the following day. Eighth, there is no showing of any mutuality of interest between the appellant and his employer on the one hand and the telephone company on the other.

That the said complaint shows that the appellant's injury was caused by his own negligence.

The memorandum filed with the demurrer of the Interstate Public Service Company contains the same allegations as the demurrers of the telephone company. In addition, it is stated that the relation of the appellant as employee or invitee of either of the appellees is not shown, also that no burden rests upon the Interstate Public Service Company to insulate its wires, where a reasonably prudent person would not expect contact with the high tension line.

It is not shown that the appellant had any legitimate business whatsoever on top of the pole of the telephone company.

The appellant was a mere volunteer or trespasser and the Interstate Public Service Company owed him no duty except not to wilfully injure him and no wilful injury is shown.

The separate demurrers of each appellee was by the court sustained and to each of said rulings the appellant at the time excepted, the appellant then refused to plead further, whereupon judgment was rendered in favor of the appellees and against the appellant. To the rendition of said judgment the appellant excepted and the ruling of the court on said demurrers is assigned as error on this appeal.

Section 4443; Burns 1926, Acts 1911, Chapter 236, page 597, provides: "That in the transmission and use of electricity of a dangerous voltage full and complete insu-

lation shall be provided at all points where the public or any employees of the owner, contractor, or sub-contractor, transmitting or using said electricity, are liable to come into contact with the wire or wires, and that dead wires are not mingled with live wires, nor to be strung upon the same support, and the arms and supports bearing live wires are especially designated and distinguished by color or other designation which is instantly apparent, and that live electrical wires carrying a dangerous voltage are strung at such distance from the poles or supports as to permit repair men to freely engage in their work without danger of shock." . . .

The first question that presents itself is the status of the appellant. He was an employee of a contractor doing work for the Winona Railway Company on repair of certain buildings. He was not an employee of either of the appellees.

The work in which he was engaged was delayed. He then left the place where he was working and went to the place where workmen of the telephone company were doing work as stated in the complaint and was injured by coming in contact with the power line of the Public Service Company.

The complaint does not show any authority of the workmen to invite him to help them. The work had no direct connection with the appellant's job. There can be no mutuality of interest in the work that was being done on which to predicate liability for negligence.

There is no charge that the appellant was wantonly or purposely injured.

The relation of the appellant to the telephone company was no more than a mere licensee. See the following cases: *Motor Speedway Company* v. *Shoup* (1929), 88 Ind. App. 572, 165 N. E. 246; *Cooper* v. *Lake Erie Co.* (1894), 136 Ind. 366, 36 N. E.

272; *Springer* v. *Byram* (1894), 137 Ind. 15, 36 N. E. 361, 23 L. R. A. 244, 45 Am. St. Rep. 159; *Pittsburgh C. C. Co.* v. *Hall* (1910), 46 Ind. App. 219, 90 N. E. 498, 91 N. E. 743; *Faris* v. *Hoberg* (1899), 134 Ind. 269, 33 N. E. 1028.

In the case of *Cooper* v. *Lake Erie Co. supra,* a man was permitted by a conductor to ride on a train. The conductor and brakeman directed the man to go upon a box car and set the brake, which he did. Without warning, employees of the railroad company negligently ran another car against the car on which he was standing and severely injured him.

The court said, "No emergency is shown for the employment of the appellant. . . . At most, the appellant was upon the train by the sufferance of the conductor and brakeman, who were themselves without authority to so receive him. Any dangers to which he thus became exposed were wholly at his own risk. The company could become liable only for wilful injury to him." To the same effect see *Stalcup* v. *Louisville, etc., & Co.* (1896), 16 Ind. App. 584, 45 N. E. 802; *Pittsburgh C. C. Co.* v. *Hall supra.*

As to the telephone company, we are of the opinion that the appellant was not an employee but at most a licensee.

As to the power company we are unable to see how there can be any liability unless he was an employee of the telephone company and, even then, a state of facts is shown to exist that shows clearly that the power company is not liable.

The power company's wires were 4½ or 5 feet above the wires of the telephone company. What business had he on top of the pole or on top of the cross arm on top of the pole?

There is no allegation that the power wire was not

properly strung and marked. There is no declaration that it mingled with the uncharged wires of the telephone company. He had no more right up there than any other member of the public.

A case in point is that of *Kent* v. *Interstate Public Service Co.* (1929), 97 Ind. App. 13, 168 N. E. 465, 466, where this same appellant, Interstate Public Service Company maintained electric transmission lines running east of the river road north of Goshen, Indiana; that the road crosses over an iron bridge with a 15-foot road bed crossing Rock Creek.

The bridge was about 60 or 70 feet long. On each side of the bridge is a truss work consisting of steel girders, the top girder being 19½ feet above the floor of the bridge. Leading to the girder on top of the bridge was an oblique girder, slanting from the ground to the top of the girder. Transmission lines are located parallel with the bridge about 20 to 24 feet east of the edge of the top girder and 12 to 14 inches higher running parallel the length of the bridge. Howard D. Kent, deceased, approached the bridge from the south proceeded to climb on the oblique girder to the horizontal girder on top. He came in contact with the wires and was killed. This court said that: "It is undoubtedly the law . . . that . . . full and complete insulation shall be provided at all times when the public is liable to come into contact with such wires, and to use every device, care, and precaution which it is practicable and possible to use for the protection and safety of life, limb, and health, limited only by the necessity of preserving the reasonable efficiency of such appliances," citing 443 Burns 1926, Acts 1911, Chapter 236, page 597, and says further that: "Whatever may have been the boy's motive . . . it is certain that he had no legitimate business up there; he was simply there without right. . . . His conduct was negligent, and if it be said that the appellee was negligent in not insulating its wires, it must be held that

the boy, being *sui juris,* was guilty of contributory negligence," citing *Graves* v. *Washington Water Power Company* (1906), 44 Wash. 675, 87 Pac. 956, 11 L. R. A. (N. S.) 452.

There is nothing in the complaint that shows there was not a sufficient number of regular employees of the telephone company to do the work, and there is no showing that the foreman had any authority other than to superintend the work; and it is not alleged that any workman or foreman had authority to employ the appellant or any other person.

We are of the opinion that the separate and several demurrers of the appellees to the complaint were properly sustained.

Judgment affirmed.