## ACKERMAN ET AL. *v.* PERE MARQUETTE RAILROAD COMPANY.

[No. 8,539.    Filed March 10, 1915.]

1. TRIAL.—*Directing Verdict.*—As against a motion to direct a verdict, the court must accept as true all facts that the evidence tends to prove and all inferences deducible therefrom.    p. 217.

2. NEGLIGENCE.—*Contributory Negligence.—Question for Court.*—Where the evidence relating to contributory negligence is undisputed and susceptible to but one reasonable inference, the question of whether contributory negligence is shown is a question of law for the court.    p. 217.

3. NEGLIGENCE.—*Injury to Property.—Contributory Negligence.—Burden of Proof.*—In an action for injury to personal property through alleged negligence of defendant, the fact that defendant's negligence is shown does not of itself entitle plaintiff to recover, but plaintiff must show freedom from contributory negligence, and that the negligence charged was the proximate cause of the injury.    p. 218.

4. NEGLIGENCE.—*Duty to Use Care.*—A person placed in a dangerous position must exercise his reasoning faculties and do all that a careful, prudent man would do under the circumstances to avoid injury, and the greater the danger, the greater the precaution that should be used.    p. 218.

5. RAILROADS.—*Crossing Accidents.—Notice of Danger.*—Railroad crossings are in themselves warnings of danger, and all persons approaching the same must act upon that assumption.    p. 218.

6. RAILROADS. — *Crossing Accidents. — Injury to Property. — Evidence.—Sufficiency.*—Plaintiff's servant engaged in the operation of a road roller on a highway crossed by defendant's railroad,

was charged with the exercise of ordinary care, and though the evidence showed negligence in the operation of the train over the crossing, and that plaintiff's road roller was struck and demolished thereby, plaintiff was not entitled to recover where undisputed evidence showed that such servant acted on the assumption that the train had passed, that he took no precaution after reaching a point within fifty feet of the crossing, and that he could have seen the train approaching had he looked, and the court properly directed a verdict for defendant. p. 218.

From Porter Circuit Court; *W. C. McMahan,* Judge.

Action by Joseph Ackerman and another against the Pere Marquette Railroad Company. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*Hickey & Wolfe,* for appellants.

*Grant Crumpacker, E. D. Crumpacker, O. L. Crumpacker,* and *William Daly,* for appellee.

MORAN, J.—On November 29, 1909, appellants were engaged in constructing a macadamized road in Laporte County, Indiana, and in this connection were using a steam roller to pack the material out of which the road was being constructed. The line of work crossed appellee's railroad, and while the steam roller was being operated in close proximity to appellee's track, it was struck by a locomotive drawing a passenger train and badly damaged. To a complaint charging negligence, an answer of general denial was addressed; a trial was had before a jury in the Porter Circuit Court, where the cause had been venued. At the close of appellants' evidence, appellee moved the court to direct the jury to return a verdict in its favor, which motion was sustained by the court. To the action of the court in this behalf, appellants duly excepted, and the ruling was carried into a motion for a new trial; the overruling of which is assigned as error in this court.

The error assigned calls for a review of the evidence as it applies to the negligence charged in the complaint. Briefly the complaint alleges that appellants on November 29, 1909, were engaged in constructing a macadamized road

in Laporte County, Indiana, which ran east and west and appellee's railroad crossed the same at an angle of about forty-five degrees running in a southwesterly and northeasterly direction. The view to the railroad for some distance back of the crossing was obstructed by timber and high banks, and the road passed through a deep cut, which made it impossible for travelers and persons working in the vicinity of the crossing to see the approach of the trains. On the date above mentioned, appellants' servant was engaged in operating a steam roller over and upon the roadbed in the course of construction, in the neighborhood of the crossing, which appellee well knew. It was necessary to pass the steam roller over the railroad crossing at this point in building the macadamized road. That while the steam roller was being operated in close proximity to appellee's track, it was struck by a locomotive which was drawing a passenger train at a high and dangerous rate of speed of seventy miles per hour. That appellee was negligent in the operation of its train; that neither the statutory nor any other signals were given as the train approached the crossing. Appellants' servant in operating the steam roller used due care; he approached the crossing at a rate of speed not to exceed one mile per hour; he examined his timepiece and knew that no train was due at this point at the time he was approaching the crossing. That the steam roller was damaged to the extent of $1,200.

The evidence discloses that the injury complained of occurred about nine a. m., on November 29, 1909. Appellants' servant in charge of the road roller was familiar with its mechanism, having operated it for something like two months prior thereto. In the line of his duty, he had crossed the railroad at this point forty to fifty times; his eyesight and hearing were good. Shortly before the accident, he started in the neighborhood of the railroad crossing and went east on the south margin of the roadbed to the county line, which was some little distance; he then

backed the roller up over the same side of the roadway.
When he had backed the road roller to a point within a
hundred or a hundred and ten feet of the railroad crossing,
he stopped and looked at his watch. From the time he had,
the passenger train was overdue from the southwest some
twenty-five or thirty minutes, and he was under the impres-
sion that it had passed although he had not heard it. He
then proceeded westward in the direction of the crossing
at the rate of one and a half to one and three-fourths miles
per hour. The railroad crossing is some two or three feet
higher than the highway at this point, but after leaving
the crossing to the southwest there is a depression in the
railroad bed or rather an embankment thrown up, which
partially obstructs the view of approaching trains from this
direction. The incline on the newly-constructed roadbed
starts some thirty feet on either side of the railroad track
and is brought up gradually so that the macadamized road-
bed is level with the top of the rails of appellee's road.
From the point where appellants' servant examined his
watch until he came within fifty feet of the railroad cross-
ing, the view of an approaching train to the southwest was
partially obstructed. He was operating the steam roller in
a standing position; the platform upon which he was stand-
ing was some two and a half feet high, and taking into
consideration the height of the locomotive and the cars, he
could have seen the top part of the locomotive and the cars.
However on reaching a point within fifty feet of the track
and from that on until he crossed the same his view was
unobstructed for a distance of about eighty rods to the
southwest. As he approached within a few feet of the rail-
road track, he shifted the position of the road roller in order
that he might reach the north side of the roadbed, as he
intended to roll the north margin of the roadbed as he had
previously rolled the south margin. He had no intention
of crossing the railroad at this time. Using the witness'
language he was backing the roller "catacornered" from

the south to the north side of the macadamized roadbed when the road roller was struck by the locomotive drawing the passenger train. As to whether a part of the roller was actually upon the railroad track is not clear but its position was such that it came in contact with the locomotive.

The diligence that appellants' servant used while handling the steam roller in such close proximity to the railroad crossing becomes highly material. We set forth a part of his testimony as it appears from the record in this connection: "Q. When you were backing up, were you looking towards the southwest along the track? A. Not after I got up within a hundred feet of the track, I wasn't, or fifty feet of the track. Q. But before that did you look? A. I looked but I couldn't see down the track. Q. But that is— that after you got within fifty feet of the track you didn't look? A. No, sir. Q. That is true, is that? A. Why I think it is, yes, sir. Q. Now you say that from the time that you got within fifty feet of the track, you never looked towards the southwest to see whether there was a train approaching? A. Yes, sir. Q. Now you say at a point forty-five feet away you could have seen down the track eighty rods? A. I wouldn't say for sure about that, but I should judge you could. Q. But as a matter of fact you didn't look, did you? A. Not within fifty feet of the track. Q. You just backed on to the railroad and you didn't look for a train within fifty feet of that track, did you? A. No, sir, I did not. Q. Well the last time you looked was about fifty feet away was it? A. About that, yes." The trial court in the exercise of its discretion, and evidently for the purpose of clearing any confusion that might appear in the record in this connection propounded the following questions: "Q. What was it that kept you from seeing the approach of the train? A. I don't know. Q. Was there anything? A. Nothing that I know of. Q. Was there any noise? A. No, sir."

From an examination of all of the evidence, the conclusion

must be reached that no signals were given by the appellee as its train approached the crossing, as appellants' servant in charge of the road roller said that he heard no signal, and likewise another servant who was engaged in unloading stone quite a distance away from the crossing stated that he heard no signal. And as against the motion to

1. direct a verdict the court must accept as true all facts that the evidence tends to prove and all inferences deducible therefrom. *Roberts* v. *Terre Haute Electric. Co.* (1906), 37 Ind. App. 664, 76 N. E. 323, 895; *Curryer* v. *Oliver* (1901), 27 Ind. App. 424, 60 N. E. 364, 61 N. E. 593. It is further disclosed that appellee was operating its locomotive and passenger train at a rate of speed of about sixty miles per hour as it approached the crossing. The facts in this case are undisputed and the legitimate inferences deducible therefrom are such as bring it within the rule of law that makes it the duty of the court to

2. adjudge upon the undisputed facts as to whether appellants were guilty of contributory negligence. *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234, 67 N. E. 680, 70 N. E. 133; *Delaware, etc., Tel. Co.* v. *Fleming* (1913), 53 Ind. App. 555, 102 N. E. 163; *Cumberland Tel., etc., Co.* v *Kranz* (1911), 48 Ind. App. 67, 95 N. E. 371; 6 Thompson, Negligence §7393.

In the case of *Pittsburgh, etc., R. Co.* v. *Seivers, supra,* 246, Jordan, J., speaking for the court said: "It is true as a general rule that negligence on a given state of facts must be one of fact, but it is equally true that a court is authorized to adjudge as a matter of law, upon undisputed facts, that negligence does, or does not, exist in the particular case. In the case at bar, under the undisputed evidence given by the appellee's own witnesses, there can be but one inference or conclusion drawn therefrom, and that is that the decedent was guilty of contributory negligence, and therefore as a matter of law a recovery in favor of the

appellee is precluded.     Under the facts the court should have directed a verdict in favor of the appellant.''

The fact that appellee failed to give the statutory signals as its locomotive approached the crossing in the case at bar, does not entitle the appellants to recover.   They 3. must show ·that such negligence was the proximate cause of the injury without which it would not have occurred, and they must further show that their servant in charge of the road roller was not guilty of negligence contributing to the injury.   *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524, 48 N. E. 352, 49 N. E. 452; *Baltimore, etc., R. Co.* v. *Young* ·(1896),. 146 Ind. 374, 45 N. E. 479; *Chicago, etc., R. Co.* v. *Thomas* (1897), 147 Ind. 35, 46 N. E. 73.

A person who is placed in a dangerous position must exercise his reasoning faculties, and do all that a careful, prudent man would do under the circumstances to avoid injury.   The greater the danger the greater the precaution that should be used.   Railroad crossings are in themselves a warning of danger and all persons approaching the same must act upon that assumption. *Cleveland, etc., R.·Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 63, N. E.· 308.

It is contended by the appellants that inasmuch as their servant was performing his labor in the neighborhood of the railroad crossing, that he was not required to 6. exercise that degree of care that the law requires of a traveler on approaching a railroad crossing.   It is true, appellants' servant was performing his labor in and about the railroad crossing on this particular occasion.   His labor,.however, was not such that he was constantly engaged at this point, and whether appellants' contention is true or not, their servant was not relieved ·from, the exercise of ordinary care under the circumstances.   The only vigilance that was exercised by appellants' servant as he approached

the crossing was that he stopped the road roller at a point about 110 feet east of the crossing, and examined his watch to ascertain whether the passenger train was due; and after he ascertained that it was overdue, he then took it for granted that the train had passed the crossing, although he had not heard it pass. After he started the road roller in motion, he gave no further attention whatever, as is disclosed by the evidence to his own safety and the safety of the property with which he was intrusted. He said in his examination as a witness that there was nothing in the way for him to have seen the approaching train had he looked to the southwest after he reached a point within fifty feet of the crossing. We must keep in mind the fact that this action was one for the recovery of damages to personal property. It was therefore necessary for appellants to aver and prove that they were not guilty of contributory negligence. *Cleveland, etc., R. Co.* v. *Moore* (1909), 45 Ind. App. 58, 90 N. E. 93; *Cincinnati, etc., R. Co.* v. *Baltimore, etc., R. Co.* (1912), 50 Ind. App. 283, 98 N. E. 304.

From the state of facts disclosed by the record, reasonable and fair minded men could draw but the one conclusion therefrom, and that is, that appellants' servant was guilty of negligence. The trial court did not err in directing the verdict of the jury. Judgment affirmed.

NOTE.—Reported in 108 N. E. 144. As to the duty of traveler on highway to use his senses of sight and hearing to avoid dangers at railroad crossing, see 90 Am. Dec. 780; 24 L. Ed. U. S. 403. As to failure to give customary signals as excusing non-performance of duty to look and listen, see 3 L. R. A. (N. S.) 391; 6 Ann. Cas. 78. As to right of one about to cross railroad track to rely on train schedules, see 17 L. R. A. (N. S.) 253. See, also, under (1) 38 Cyc. 1565; (2) 29 Cyc. 600; (3) 29 Cyc. 601; (4) 29 Cyc. 512; (5) 33 Cyc. 985; (6) 33 Cyc. 981.