## MUNSON v. RUPKER.

[No. 11,796. Filed June 3, 1925. Rehearing denied March 16, 1926. Transfer denied February 21, 1933.]

*Charles T. Hanna, Thomas D. Daily* and *McNutt & McNutt,* for appellant.

*Fenton, Steers, Herbst & Klee* and *S. C. Kivett,* for appellee.

McMAHAN, J.—Complaint by appellant in two paragraphs to recover damages on account of injuries received while riding in an automobile owned and driven by appellee. The first paragraph alleges that appellee invited appellant to become his guest and ride in defendant's automobile from Indianapolis, Indiana, to Danville, Illinois; that appellant accepted the invitation and that, with others, they started to make the trip; that while traveling on a highway west of Covington, appellee drove the automobile in a careless manner at a speed of 40 miles an hour, and that on account of such excessive speed, appellee negligently lost control of the automobile and ran off the road into a ravine, causing the automobile to turn over and injure appellant.

The second paragraph charges that appellee negligently drove the automobile at a speed of 40 miles an

hour "and while so driving said automobile, he carelessly and negligently attempted to turn to the right upon a highway then and there running north and south, and on account of the speed of said automobile, defendant could not then and there, and did not then and there successfully make said turn, and carelessly and negligently drove said automobile off of both said highways into a ravine about twenty (20) feet deep, causing said automobile to turn over."

The issues being closed by a general denial, there was a trial by jury which resulted in a verdict and judgment for the defendant, from which the plaintiff appeals. The error assigned relates to the overruling of the motion for a new trial.

The accident which resulted in appellant's injury occurred Saturday, November 6, 1920. Appellant and Mr. Summers, who were riding in the rear seat of the automobile by the side of appellant at the time of the accident, were guests of appellee and his wife at their home the Sunday next prior to the day of the accident. Each of them testified that while at appellee's house on that Sunday, appellee and his wife told them they were going to Danville, Illinois, the following Saturday to visit Mrs. Rupker's parents and invited appellant and Mr. Summers to go along with them. Appellee and his wife, each deny having given them any such invitation. Their testimony in substance is that appellant and Mr. Summers were self-invited guests on the trip to Danville.

Appellant contends that the court erred in giving and in refusing to give certain instructions. In answer to these contentions, appellee says the evidence shows that appellant was guilty of such contributory negligence as bars recovery, and that the giving or refusal to give instructions would not, even though erroneous, be reversible error.

The evidence bearing on the question of contributory negligence is, in substance, as follows: Mr. and Mrs. Rupker, with their small child, and Mr. Summers left the Rupker home about two p. m. and drove to appellant's office where he got into the automobile. After stopping at a store for a few minutes, and at a filling station to get some gasoline, they started out on the Crawfordsville road. They stopped before leaving Indianapolis at Emerichsville bridge, leaving there sometime between 3 and 3:30, and reaching Crawfordsville, about 5 p. m., where they stopped long enough for Mr. Rupker to get out and buy a flash light. While at Crawfordsville appellant got out of the automobile, as he says, to "stretch himself." They stopped once between Crawfordsville and Covington, when appellant got out to inquire about the road to Covington. They stopped at Covington long enough to inquire the way. No one got out of the automobile at Covington. The accident took place four miles west of Covington. It was dark at the time. The lights on the automobile had been turned on before they reached Covington.

Appellant testified that before reaching Covington and while traveling a distance of eighty miles he called appellee's attention to the speed of the automobile, eight to twelve times; that on each of such occasions appellee was running about 35 or 40 miles an hour. The evidence does not show how many times appellant called appellee's attention to the speed before reaching Crawfordsville. Nor does it show at what point or points on the road, he spoke to appellee about the speed of the automobile. Appellant, when asked as to whether he spoke to appellee a number of times before reaching Crawfordsville, said he would not say it occurred a number of times, but that it occurred. It may, according to his testimony, have occurred but once while traveling the 40 miles before reaching Crawfordsville, and that one time may have

been just after leaving Indianapolis. The speed of the automobile while traveling the last 30 or 35 miles before reaching Crawfordsville may have been such as would not have impressed a reasonably prudent person that it was unsafe to continue riding in the automobile. Appellant testified that each time he spoke to appellee about the speed, they were going about 35 or 40 miles an hour, which he said was too fast to suit him; that it was because he anticipated that the speed of the automobile might result in an injury that he warned appellee. When out of the automobile at Crawfordsville, he knew appellee had been driving the automobile in the manner as described by him; that he got back into the car voluntarily; that he made no demand that appellee stop the automobile and let him out; that he could have returned from Crawfordsville to Indianapolis by the interurban railroad, and from Covington he could have returned on the railroad.

The evidence shows that it took them at least an hour and a half to run from Emerichsville to Crawfordsville— a distance of 40 miles. If it took an hour and a half to run that distance, the average speed during that time was a trifle less than 27 miles an hour. The natural inference, then, is that they were not traveling at a speed of 35 to 40 miles an hour for any great distance before reaching Crawfordsville.

There is no evidence as to the character of the road, other than that it was a gravel road at the place of the accident. Appellee testified that where there was a stretch of good road he would go at a speed of from 30 to 35 miles an hour and at other times from 18 to 20 miles an hour. The evidence as to the speed after the parties left Crawfordsville and the times and places where appellant spoke to appellee about the speed of the automobile, is as indefinite as it is as to the speed before reach-

ing Crawfordsville. The automobile in which they were riding was an eight cylinder Peerless touring car.

We cannot, under this evidence, say as a matter of law, that appellant should have got out at Crawfordsville or at any other place and not have gone any farther with the party, or that he was guilty of such negligence, as necessarily bars a recovery.

In *Cram* v. *City of Des Moines* (1919), 185 Ia. 1292, 172 N. W. 23, 18 N. C. C. A. 162, there was a judgment for defendant. On appeal the plaintiff, as in the instant case, challenged the action of the court in giving instructions and the defendant contended that the action of the court in giving the instructions was not reversible error, for the reason that the evidence showed the plaintiff was guilty of contributory negligence and not entitled to recover in any event. In denying the contention, the court said: "But we fail to see the applicability of the rule. We are not favored with any suggestion how we may in reason hold as matter of law the plaintiff must fail should a new trial be awarded. We are not prepared to say that if on remand a jury should find that the driver was not negligent, or that, if he was the plaintiff did not contribute to the negligence, we should hold on appeal that such finding cannot be sustained on the evidence. For that matter, we cannot know in advance that plaintiff will not add to the strength of his testimony. The rule invoked by appellee is applied where appellate court can find that some essential to recover is nonexistent. A familiar illustration is where there is judgment against an officer for having levied upon the property belonging to another than the execution defendant, and it appears that no notice of ownership was served. As said, we cannot affirm on the ground that reversal and remand will be idle."

In *Clark* v. *Traver* (1923), 205 App. Div. 206, 200 N. Y. Supp. 52, cited by appellee, the plaintiff and another

man were sitting in the seat by the side of the driver. They had gone 75 or 80 miles at the terrific rate of 50, 60, and 70 miles an hour, slowing down to 45 or 50 miles an hour only when going through a town. One and only one complaint was made by the plaintiff in that case, and that was shortly after they had started and at a time when, as the plaintiff testified, they were going between 60 and 70 miles an hour, and when he told the driver he "was going too fast" and that he, plaintiff, "did not care so much about riding that way." The facts in that case are not to be compared with the facts in the instant case.

If, in the instant case, the testimony of appellee is to be given consideration in determining the question of appellant's negligence, a court or jury would be justified in finding that appellant was not guilty of any contributory negligence. If appellee's testimony is believed it is clear he was not guilty of any negligence before reaching Covington. If he was not guilty of negligence before reaching Covington, we are not prepared to say that appellant was guilty of contributory negligence.

Appellant, by instruction No. 5, requested the court to instruct the jury, that if it found he was in appellee's automobile at the request or with the consent of appellee, that appellee failed to use reasonable care in the operation of his automobile, that appellant received his injuries by reason of such failure to use reasonable care, and without any negligence of appellant contributing thereto, their verdict should be for appellant. The court refused to give this instruction, but after modifying it by inserting the word "active" before the word "consent," gave it as modified. Other similar changes were made in instructions tendered by appellant.

Instruction No. 4, given by the court at the request of appellee, is as follows: "One of the material allegations in plaintiff's complaint is that at the time of the accident

in question, the plaintiff was riding with the defendant as the invited guest of said defendant. The court instructs you if you find from the evidence that plaintiff was riding at his own request and merely by sufferance of or without objection by defendant, and not as the invited guest of said defendant and without any contract between plaintiff and defendant whereby plaintiff was to compensate defendant, then in that case the defendant would owe no duty to plaintiff except not to injure him intentionally or wilfully; and if the facts be as indicated in this instruction then your verdict should be for the defendant, unless you find from the evidence that defendant intentionally or wilfully brought about the injuries complained of."

We take it that the court, by the use of the expression "active consent," meant to exclude acquiescence or implied consent. That this was what the court meant is made clear by instruction No. 4, given by the court at the request of appellee, wherein the court instructed the jury that if it found "from the evidence that plaintiff was riding at his own request and merely by sufferance or without objection by defendant, and not as the invited guest," etc. Appellee's contention is that appellant was simply a guest or passenger in the automobile at sufferance or with his (appellee's) passive consent, and that under such circumstances the only duty he owed appellant was not to wantonly or intentionally injure him.

The hospitality of an owner and driver of an automobile should not be burdened with a responsibility that makes it unreasonably hazardous for him to invite, or even permit another to occupy a seat in his automobile. But one who takes another into one of these high-powered swiftly moving machines knows disaster may follow unless he operates it with the required degree of care. He must know and realize that he has voluntarily taken the life and safety of a human being into his care.

As was said in *O'Shea* v. *Lavoy* (1921), 175 Wis. 456, 185 N. W. 525, 20 A. L. R. 1008: "He must realize that he has voluntarily received into his keeping the lives and safety of his passengers, and he should not be permitted to trifle therewith, or to renounce all responsibility in such respect."

The general rule as established by the authorities is that the owner or operator of an automobile owes to an invited guest the duty of exercising reasonable care in its operation, and not unreasonably to expose him to danger and injury by increasing the hazard of travel. *Perkins* v. *Galloway* (1915), 194 Ala. 265, 69 So. 875, L. R. A. 1916E, 1190, second appeal *Galloway* v. *Perkins* (1917), 198 Ala. 658, 73 So. 956; *McGeever* v. *O'Byrne* (1919), 203 Ala. 266, 82 So. 508; *Spring* v. *McCabe* (1921), 53 Cal. App. 330, 200 Pac. 41; *Barrett* v. *Levy* (1919), 213 Ill. App. 129; *Masten* v. *Cousins* (1919), 216 Ill. App. 268; *Beard* v. *Klusmeier* (1914), 158 Ky. 153, 164 S. W. 319, 50 L. R. A. (N. S.) 1100, Ann. Cas. 1915D, 342; *Fitzjarrell* v. *Boyd* (1914), 123 Md. 497, 91 Atl. 547; *Bauer* v. *Griess* (1920), 105 Neb. 381, 181 N. W. 156; *McKenzie* v. *Oakley* (1920), 94 N. J. L. 66, 108 Atl. 771; *Tennessee, etc., R. Co.* v. *Vanhoy* (1920), 143 Tenn. 312, 226 S. W. 225; *Glick* v. *Baer* (1925), 186 Wis. 268, 201 N. W. 752; *Pigeon* v. *Lane* (1907), 80 Conn. 237, 67 Atl. 888, 11 Ann. Cas. 371; *Mayberry* v. *Sivey* (1877), 18 Kan. 291; *Avery* v. *Thompson* (1918), 117 Me. 120, 103 Atl., 4, L. R. A. 1918D 205, Ann. Cas. 1918E 1122; *Hemington* v. *Hemington* (1922), 221 Mich. 206, 190 N. W. 683; *Clark* v. *Traver* (1923), 205 App. Div. 206, 200 N. Y. Supp. 52; *Patnode* v. *Foote* (1912), 153 App. Div. 138 N. Y. Supp. 221.

In *Perkins* v. *Galloway*, supra, after a review of the authorities, it was held: 1. One not a common carrier, who voluntarily undertakes to transport another in his automobile, is responsible for injury to the person trans-

ported resulting from negligence, whether the service was for compensation or was gratuitous. 2. The duty of the owner of an automobile to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of the method of travel, but he must exercise the care and diligence which a man of reasonable prudence engaged in like business would exercise for his own protection and the protection of his family and property.

On the second appeal, *Galloway* v. *Perkins,* supra, the rule as stated on the former appeal was re-affirmed, the court saying: "It does seem to be a harsh or hard rule which makes the carrier or host liable to the passenger or guest as for injury or death, in the absence of gross negligence or wantonness, especially when the passenger or guest is treated by the carrier or host, just as the latter himself is treated, and when both are injured by the same accident, as in this case. If this be so, the reply is; The law is so written, and cannot and should not be changed to meet hard cases; such instability would make shipwreck of the law." And after calling attention to the fact that it had been held that a gratuitous carrier of goods, like a gratuitous bailee of goods was not liable to the owner of the goods, in the absence of gross negligence, it was held that the owner and driver of an automobile who undertakes to transport another gratuitously, is liable for injuries to such person, not withstanding the rule as to the carriage of goods gratuitously by one not a common carrier. Referring to the evidence in that case the court said: "It was not necessary to a recovery that defendant himself should have *expressly invited intestate to ride in the car. The deceased was clearly not a trespasser, and was expressly invited by one of the parties in the automobile, and his presence in the car was known and acceded to by the defendant. The duty of de-*

*fendant not to injure the deceased was therefore the same as if he had expressly invited deceased to ride with him. . . .* Under all the evidence there can be no reasonable doubt that deceased was a passenger in the automobile, and that the defendant owed him the duty which he owed any other passenger therein, and this whether or not he was the defendant's expressly invited guest." (Our italics.) To the same effect see *McGeever* v. *O'Byrne, supra.*

This rule is stated in Huddy on Automobiles, 5th ed. §678, as follows: "When the occupant of an automobile is injured through the operation of the machine, and it is shown that the driver was negligent and the occupant was not guilty of contributory negligence, it is clear that the latter can maintain an action against the driver and recover compensation for injuries. The fact that the occupant was a guest or gratuitous passenger of the driver or owner of the machine creates no exception to the general rule. The driver of a motor vehicle is under obligation of exercising reasonable care, not only for the safety of pedestrains and other travelers, but also for the safe transportation of his guests and other passengers in the machine. The express or implied duty of the owner and driver to the occupant of the car is to exercise reasonable care in its operation, and not unreasonably to expose him to danger by increasing the hazard of that method of travel. . . . Failing in this duty, he will be liable to the occupant in the car, for injuries which are the result of such carelessness or lack of diligence." The rule announced is followed and approved in *Hemington* v. *Hemington, supra.*

In *Pigeon* v. *Lane, supra,* it was held that as to a licensee, the owner of the vehicle could be held liable for his "active negligence" which would include his negligent acts by which the danger was increased, or a new danger created, while the plaintiff was riding under such license.

In *Dickerson* v. *Connecticut Co.* (1922), 98 Conn. 87, 118 Atl. 518, where a guest was injured while riding in an automobile, the defendant insisted that "active negligence" was the test of his liability, *Pigeon* v. *Lane* was explained, the court saying the term "active negligence" meant no more than want of ordinary care.

A few jurisdictions have held that as between an invitor and invitee in case of gratuitous transportation, the driver of the vehicle must be guilty of gross negligence before he can be held liable for an accident. See *Massaletti* v. *Fitzroy* (1917), 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C 264, Ann. Cas. 1918B 1088, 18 N. C. C. A. 690. But in jurisdictions like Indiana, where there are no degrees of negligence, the doctrine of gross negligence is not applicable.

There are also a few cases holding that a person riding in an automobile for his own accommodation and gratuitously, cannot hold the driver liable unless the latter is guilty of a wanton or intentional wrong. See *Crider* v. *Yolande Coal, etc., Co.* (1921), 206 Ala. 71, 89 So. 285, where the court, in speaking of one who was permitted to ride in a motor truck as an accommodation and gratuitously, said: "He was at best a mere licensee, and assumed all the risks of carriage except such as might result from wanton or intentional wrong or a failure to exercise due care to avert injury after his danger became apparent."

And in *Lutvin* v. *Dopkus* (1920), 94 N. J. L. 64, 108 Atl. 862 (two cases), the parties to the actions were members of a social organization, which held a celebration at Staten Island. The defendant, residing at Staten Island, and being the owner of an automobile, was solicited by the plaintiffs to take them to the picnic grounds and return in his automobile. On the return trip the car was overturned and the plaintiffs injured thereby. The court held that the act of the defendant in

acceding to the request of the plaintiffs possessed none of the elements of a contract and involved no elements of an invitation, so as to bring the case within the rule of law applicable to a passenger upon a railway train or a hired bus, or to cases of express or implied invitation; that the legal status of the plaintiffs was that of licensees, to whom the only legal duty imposed on the defendant was to refrain from doing any act wantonly or wilfully injurious.

And in *Mackenzie* v. *Oakley* (1920), 94 N. J. L. 65, 108 Atl. 771, where the owner of an automobile invited another to occupy a seat in his automobile, it was held that the duty of the owner was to exercise due care, and that under the facts the rule of *res ipsa loquitur* was applicable.

In *Grabau* v. *Pudwill* (1920), 45 N. D. 423, 178 N. W. 124, the court said: "The plaintiff received no invitation to ride upon the car. Yet, the defendants knew all the time, that he was upon the runningboard of the car.. He was in plain sight. He was a guest of the defendants, by sufferance. It is true, that he was a gratuitous guest, but this, alone, is not sufficient to relieve defendants from, at least, the exercise of ordinary care for his safety. In fact, we can see but little difference between defendants' duty toward him as a gratuitous guest, after they acquired full knowledge of his presence on the runningboard, than if they had, in the first instance, invited him as their guest." The supreme court of West Virginia, referring to that case, said: "In that case the evidence impliedly showed an invitation to ride by the owner, from whom the duty arose to observe ordinary care not to injure the invitee; even a trespasser is entitled to this protection." *Christie* v. *Mitchell* (1923), 93 W. Va. 200, 116 S. E. 715, 23 N. C. C. A. 306. The statement that "Even a trespasser is entitled to this protection" may not be absolutely correct as an abstract statement of the

law. But the court doubtless had in mind a case of a helpless trespasser, where his danger was known to the defendant, as was the fact in the North Dakota case and in *Davidson* v. *Pittsburg, etc., R. Co.* (1895), 41 W. Va. 407, 23 S. E. 593, which was cited in support of the statement.

In *Siegrist* v. *Arnot* (1881), 10 Mo. App. 197, where the defendant's servant had knowingly received the plaintiff into a carriage driven by him, and where the jury had been instructed there could be no recovery in the absence of gross negligence, the cause was reversed because of the giving of this instruction, the court saying: "In the first place, there are no degrees of negligence known to the law where the subject of the bailment is a human life. Any negligence under such circumstances is culpable, and may well be deemed gross. . . . Can it be said for a moment that, where one has voluntarily taken a human life into his custody, although without reward, he is discharged from liability if he bestows in the preservation of that life no more than that degree of care which even the most inattentive and thoughtless take of their own concern? Such a doctrine would greatly lessen the sanctity of human life. I can find no case in any book which supports it. The defendant was under a higher obligation of care towards the wayfarers on the public streets, towards whom he stood in no relation of confidence, as he did towards the plaintiff. The correct principle to the case is, that 'if a man gratuitously undertakes to do a thing to the best of his skill, when his situation or profession is such as to imply skill, an omission of that skill is imputed to him as gross negligence.' . . . This must, however, be said with the qualification that the word 'gross,' in the sense, is not used as expressing the antithesis of a certain defined degree of care. It is either used in the sense of 'culpable' or 'actionable,' or else it is a mere epithet." The Su-

preme Court, however, on appeal, acting on the theory that the evidence without conflict showed the plaintiff had entered the carriage without the knowledge or consent of the servant and that the servant at the time of the injury did not know the plaintiff was in the carriage, reversed the court of appeals and held there was no liability. *Siegrist* v. *Arnot* (1885), 86 Mo. 200.

In *Rappaport* v. *Stockdale* (1924) (Minn.), 199 N. W. 513, it was held that one who had engaged an automobile van to move his goods, which he had assisted in loading, was not a trespasser while riding in the van to the place where the goods were to be unloaded. The plaintiff not being a trespasser, the court said: "Such being the argument and concession, it is not necessary to consider whether any nice distinction should be made as to plaintiff being an invitee or mere licensee. In either event the right of recovery would have to be predicated in this case upon active negligence of the driver in the operation of the van after knowledge that plaintiff was riding thereon. Some courts hold that as to one riding even as an invitee there is no duty of the driver or owner except to refrain from wanton or gross negligence. *Massaletti* v. *Fitzroy* (1917), 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C 264, Ann. Cas. 1918B 1088, may be said to be the leading case of the courts so holding. However, the trend of the decisions in most of the states is to the effect that towards a person invited to ride in a private vehicle, though held a licensee, the driver of such vehicle owes the duty to refrain from doing any negligent acts by which the danger of riding upon the conveyance is increased or new danger created. In other words, he must drive with ordinary care." And referring to *Mazey* v. *Loveland* (1916), 133 Minn. 210, 158 N. W. 44, L. R. A. 1916F 279, which related to an invitee upon real estate, the court said such cases were not in point.

It seems to us that the only sensible and humane rule

is that an owner and driver of an automobile, owes a guest at sufferance, the duty of using reasonable care so as not to injure him. The rule as to trespassers and licensees upon real estate, with all its niceties and distinctions is not to be applied to one riding in an automobile at the invitation of, or with the knowledge and tacit consent of the owner and operator of the automobile. A trespasser and licensee going upon a tract of land—an inert, immovable body—takes it as he finds it, with knowledge that the owner cannot and will not by any act of his start it in motion and hurl it through space in a manner that may mean death to him who enters thereon. He who enters an automobile to take a ride with the owner, also takes the automobile and the driver as he finds them. But when the owner of the automobile starts it in motion, he, as it were, takes the life of his guest into his keeping, and in the operation of such car, he must use reasonable care not to injure any one riding therein with his knowledge and consent. It will not do to say that the operator of an automobile owes no more duty to a person riding with him as a guest at sufferance, or as a self-invited guest, than a gratuitous bailee owes to a block of wood. The law exacts of one who puts a force in motion that he shall control it with skill and care in proportion to the danger created. This rule applies to a guest at sufferance as well as to a guest by invitation.

As was said in *Colborne* v. *Detroit, etc., Ry.* (1913), 177 Mich. 139, 143 N. W. 32: "In the light of common knowledge courts can well take judicial notice of the automobile, not only as a most useful and pleasing means of swiftly transporting persons and property for pleasure or business, when properly controlled and cautiously driven, but as a vehicle in its possibilities so destructive when in the hands of careless and reckless drivers as

to spread over the land the maimed and dead until it has belittled the cruelties of the car of Juggernaut."

The possibilities of the automobile in the hands of careless and reckless drivers is vividly told in the recent report of the Underwriters Association, wherein, it is stated that 19,000 people were killed and 450,000 injured in automobile accidents in the United States, in 1924.

We hold the court erred in refusing to give instruction No. 5, as requested by appellant, and in giving instruction No. 4, tendered by appellee. What we have said in relation to these instruction disposes of the questions pertaining to the giving and refusal to give other instructions.

Judgment reversed with directions to sustain appellant's motion for a new trial and for further proceedings.

Nichols, J., dissents.*

* See p. 36.

### ON PETITION FOR REHEARING.

McMAHAN, J.—The question of controlling importance in this case is whether appellee owed appellant the duty of reasonable care. Appellee insists that appellant was a licensee or guest at sufferance, and that the only duty imposed upon him was not to intentionally or wantonly injure appellant. We cannot agree with this contention even if it be conceded appellant was a licensee or guest at sufferance. Appellee testified that he, his wife and daughter, and Summers got into his automobile at his house and drove from there to appellant's office, where appellant without any invitation got in the automobile. Under the facts as testified to by appellee an implied invitation on the part of appellee might well be inferred. We, however, are satisfied to base our decision upon the theory that appellant was not an invitee, but was a licensee or guest at sufferance as claimed by appellee.

As shown in the main opinion, the courts of last resort in this country are not in accord with each other in dealing with this question. The most remarkable and striking view on the subject is the one adopted by . the Supreme Court of New Jersey in *Lutvin* v. *Dopkus* (1920), 94 N. J. Law. 64, 108 Atl. 862, and *Rose* v. *Squires* (1925), 101 N. J. L. 438, 128 Atl. 880, where the court relied upon an analogy to earlier real property cases holding that a licensee can recover only for injuries sustained by reason of the willful acts of the landowner, and where the court based the distinction between a licensee and an invitee, not on the ground of the purpose of the injured person's presence in the automobile, but on the question as to whether such person was invited to ride or was merely permitted to do so. This theory has been repudiated and discarded by most courts. The view taken by the Supreme Court of New Jersey may be said to be peculiar to that state. The application of such theories to automobile cases is, in our judgment, unsound. Such cases as *Thistlewaite* v. *Heck* (1921), 75 Ind. App. 359, 128 N. E. 611, relating to the liability of land owners are not of controlling influence.

Appellee calls attention to *Crider* v. *Yolande Coal & Coke Company* (1921), 206 Ala. 71, 89 So. 285, where the plaintiff was riding in an automobile truck and where the court, after calling attention to the fact that plaintiff was not a "passenger," said: "He was at best a mere licensee, and assumed all the risks of carriage except such as might result from wanton or intentional wrong or a failure to exercise due care to avert injury after his danger became apparent." This case, it will be observed, recognizes that the driver of an automobile may under certain circumstances owe a mere licensee the duty of using due care not to injure him.

And in *Petree* v. *Davison-Paxon-Stokes Co.* (1923), 30 Ga. App. 490, 118 So. 697, after stating the rule as to

trespassers, the court said: "In the case of a licensee, 'there is a slightly higher duty on the part of the owner or proprietor of the premises. He must not wantonly and wilfully injure the licensee; *and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated.* . . . The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done.' . . . 'After the presence of the licensee is known, exactly the same acts of caution may be required of the proprietor to satisfy legal duty as would be necessary if the licensee were invited.' " To the same effect, see *Southern Ry. Co.* v. *Chatman* (1906), 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675.

In *Rowe Furnace Co.* v. *Patterson* (1904), 120 Ga. 521, 48 S. E. 166, a casual visitor and lounger in a blacksmith shop was injured by the negligence of an employee of the defendant. The complaint was held not to state a cause of action because it failed to allege knowledge on the part of defendant or its employee of the presence of the plaintiff upon the premises. In this connection it was said: "Still, we think that, even as a trespasser, he would have the right to recover for any injuries sustained by him in consequence of the defendant having negligently and recklessly set in motion any destructive agency or force the natural tendency of which would be to imperil his life, if at the time of such negligent and reckless act the defendant knew, or ought to have known, that he was where he was likely to be injured thereby."

In *Cleveland, etc., Co.* v. *Stephenson* (1894), 139 Ind. 641, 37 N. E. 720, cited by appellee, the jury, in answer to interrogatories, found the defendant did not know of the presence of the plaintiff at the time of the injury so that the statement that the company owed him no protection from its mere negligence, must be limited to the facts in that particular case, rather than as being applicable to all cases.

And this court in *Terre Haute Traction Co.* v. *Sanders* (1923), 80 Ind. App. 23, 136 N. E. 54, 56 referring to the duty of a landowner to a licensee said: "It may be said that a licensee takes the premises as he finds them with all their risks and dangers, and the owner of the premises owes him no duty of making any active effort to discover his presence, but, if the owner discovers his presence and sees him in a situation of peril, he may not do an affirmative act which might reasonably be expected to increase the peril." Again, on page 25, the court, continuing the discussion, said: "It may be conceded as contended for by appellant that a mere licensee goes upon the lands of the licensor at his own risk and takes the premises as he finds them, but the licensor has, however, no right to create a new danger while the license continues." See also *Cleveland, etc., R., Co.* v. *Means* (1915), 59 Ind. App. 383, 404, 104 N. E. 785, 108 N. E. 375.

Massachusetts, in dealing with this question, adopted the rule applicable to a gratuitous bailee of personal property, and held that a self-invited guest in an automobile could only recover in cases of gross negligence on the part of the driver. The Supreme Court of Pennsylvania, in attempting to apply the law of gratuitous bailment, reached a somewhat different conclusion, and, in *Cody* v. *Venzie* (1919), 263 Pa. 541, 107 Atl. 383, held that the care required of the driver of the automobile

varied with the purpose for which the passenger or goods were transported. *Massaletti* v. *Fitzroy* (1917), 228 Mass. 487, 118 N. E. 168, L. P. A. 1918C, 264 Ann. Cas. 1918B, 1088 being cited with approval.

But the analogy between gratuitous bailment of personal property and the gratuitous transportation of a human being in an automobile does not hold. The degree of protection required to be given property rights is not necessarily the same as that which must be given to human life. See 74 Pa. U. L. Rev. 86, where the authorities are reviewed and the rule announced by us in the instant case is said to be the correct one. See also 24 Mich. L. Rev. 200.

The rule announced by us requiring the driver of an automobile to exercise reasonable care has been adopted and followed in Minnesota, New York, North Dakota, and West Virginia. In addition to the authorities cited in the original opinion, see *LaRose* v. *Shaugnessey Ice Co.* (1921), 197 App. Div. 821, 189 N. Y. Supp. 562.

In considering the question of contributory negligence on the part of appellant, it must be remembered that he was not required to establish his freedom from fault. Section 380 Burns 1926, Acts 1889, p. 58, makes contributory negligence a matter of defense in all actions for personal injuries, and in attempting to apply decided cases to a state of facts it is important to keep in mind the law under which each case was decided. It may be conceded that appellant was negligent, but that does not prevent a recovery. The evidence must go further and show that his negligence was a proximate cause of the injury, without which the injury would not have occurred. *Ackerman* v. *Pere Marquette, etc., R. Co.,* (1915), 58 Ind. App. 212, 108 N. E. 144.

And as said in *Milwaukee, etc., Railway Co.* v. *Kellogg* (1876), 94 U. S. 469, 474, 24 L. Ed. 256, 259: "The true

rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it." Where only one inference can be drawn from the facts, the court may declare whether an act was the proximate cause of the injury or not. But that is rarely the case. *Graham* v. *Charlotte* (1923), 186 N. C. 649, 120 S. E. 466. The casual relation, if any, between appellant's negligence and his injury in the instant case was a question for the jury. See also *Glick* v. *Baer* (1925), 186 Wis. 268, 201 N. W. 752, and *Marcinowski* v. *Sanders* (1925), (Mass.), 147 N. E. 275.

Petition denied.

Nichols, J., Dissents. *

* See p. 42.

### DISSENTING OPINION

NICHOLS, J.—I do not consent to a reversal of the judgment in this case. The following is a verbatim statement of a part of the testimony of the appellant:

"Q. And you appreciated the danger that might happen to the occupants of that machine by such driving, didn't you?

A. Well, yes sir.

Q. Now you observed that fast driving as you said, at different points along the road. At about what point do you think you first observed it?

A. Well, I suppose it commenced after we left Emerichsville.

Q. How long after you left Emerichsville?

A. I didn't keep time.

Q. Well, did that occur a number of times between Emerichsville and Crawfordsville?

A. I don't say that it occurred a number of times, but it occurred.

Q. And before you reached Crawfordsville, you knew of this manner in which he was driving, didn't you?

A. Why, yes any one knows when a man is driving fast.

Q. Now then between Crawfordsville and Covington, you also warned him different times?

A. I spoke to him about the driving, at different times when he would go too fast.

Q. I am asking you if between Crawfordsville and Covington you did?

A. Certainly.

Q. And he didn't heed you at all?

A. Absolutely not.

Q. And continued to disregard it?

A. Absolutely.

Q. And you knew that when you reached Covington that he had been disregarding every warning that you gave him?

A. Well, yes.

Q. And you knew it when you reached Crawfordsville?

A. Well, I suppose so. I don't know that he disregarded it but he didn't pay any attention, didn't reply.

Q. You knew that it didn't change his conduct?

A. Well, in a way it didn't, no.

Q. After you left Covington, you recall of warning him one time just before the accident?

A. Yes.

Q. Did you warn him any other time before the accident?

A. I don't think I did after we left Covington.

Q. And the other times of the 8 or 10 or 12 or more times was before you reached Covington?

A. Yes.

Q. You were out of the car at Crawfordsville?

A. Yes.

Q. And at the time you got back in that car you knew that he had been driving in the manner you described, didn't you?

A. Yes.

Q. Did you voluntarily get back in the car at Crawfordsville?

A. Why certainly.

Q. Did you voluntarily get back in the car over at Covington?

A. Why certainly—I didn't get out of the car at Covington.

Q. Well, near Covington, when you made inquiry?

A. Yes, I voluntarily did.

Q. Was there a manner of conveyance by railroad or interurban that you could have come back to Indianapolis at Crawfordsville or Covington?

A. Not at Covington; there was a Crawfordsville.

Q. Was there a Big Four Railroad at Covington?

A. I suppose so, yes.

Q. Did you demand at any time that he stop the car and let you out?

A. No sir.

It clearly appears by this uncontradicted evidence, given by the appellant himself, that he fully appreciated the danger that might happen to himself and other occupants of the car because of the negligence of the driver, that he observed the fast driving at different points along the road, and that he had his opportunity thereafter to leave the car, in fact that he was out of the car more than once, and each time returned to it voluntarily. In so doing after he fully appreciated the danger, and it appearing from the evidence at both Crawfordsville and Covington that there was railroad or traction transportation by which he could have returned to Indianapolis, he was guilty of contributory negligence as a matter of law. If, as he contends, appellee was not

using ordinary care in driving at a speed at from 35 to 40 miles an hour, then appellant, fully appreciating the danger of such speed, was not using ordinary care when he remained in the automobile having his opportunity from time to time to leave the same. In the case of *Sheehan* v. *Coffey* (1923), 205 App. Div. 388, 200 N. Y. S. 55, Sheehan, the guest, as in this case had sued Coffey, the owner of the automobile, for damages because of an injury suffered through the negligence of Coffey resulting in an accident. Sheehan testified that:

"We might have been there ten or fifteen minutes and we came out and lighted the cigars up, and we started along and we got going, and right outside of Valatie we got on that road going into Hudson, and he started to speed up.... So he started speeding his car up, and he was going between 60 and 70 miles an hour, and he broke his speedometer. I said he was going too fast, and I didn't care so much about riding that way, and he told me to mind my own business, that he owned the car. 'You are a guest of mine,' he said, and he kept laughing. He said: 'You are not afraid to ride fast, are you?' I said: 'I don't care much about riding so.' First, he might slack up to forty-five or fifty, and then he would step on the gas again and keep it going, and you couldn't see what distance he was making because the speedometer was broken; but I think he must have been making fifty or sixty miles an hour all of the time. When he would run into some town he would slow down to forty or fifty miles an hour, and when he got outside he would drive right along, and hitting in to Poughkeepsie I think his car was going as fast as the car could go, because he was going very fast when he hit it up around the turn there. Carroll even told him— he said he was going too fast, and he told us to mind our own business. So we were just pulling out of Poughkeepsie there. It was kind of a short turn, and we saw a car coming ahead of us."

The court held that:

"Such a guest does not satisfy the rule of due care for his own protection who makes the mild protest which this plaintiff says he made and is told to mind his own business and who without further personal

protest or request to stop the car at a convenient spot continues to ride at the terrific rate of fifty and sixty miles an hour from a point to the north of Hudson, where he made his protest to a point the other side of Poughkeepsie, where the accident occurred, a distance of many miles. He seems to have had plenty of time and opportunity to save himself from the danger which he says was so apparent to him and against which he so mildly protested. He could have asked to be let off at the city of Hudson or at the city of Poughkeepsie or at towns through which he says they passed between those two cities, from any of which he could have made his way back to Albany or down to New York by some other conveyance. When with full knowledge of the fact that the owner and driver of the car would not brook any interference with his manner of driving the same, however reckless, the plaintiff remained in the car without further protest or attempt to protect himself from apparent danger, and there was ample time within which he might have directed that the vehicle be stopped in order that he might get out of it; especially when he could have stopped at such convenient stations as Hudson and Poughkeepsie, he was as guilty of negligence as the driver himself. He must be deemed to have acquiesced and to have taken the risk of the accident which befell him."

The court held that such a record would have sustained the granting of a motion for a non-suit or directed verdict upon the ground that the plaintiff was guilty of contributory negligence as a matter of law.

The case of *Clark* v. *Travor* (1923), 205 App. Div. 206, 200 N. Y. S. 52, states the rule of law to be that the guest should call the attention of the operator or the owner to the danger apprehended, protest against it, and unless he is delivered from it, he should get out of the car if that can be done with safety or direct that the vehicle be stopped and when stopped get out of it.

In *Sharp* v. *Sproat* (1922), III Kan. 735, 208 Pac. 613, 26 A. L. R. 1421, the court speaking of the duty of Sharp, the guest, to exercise due care, says:

"If he had time and opportunity to do so, he could have warned the driver, could have protested against the excessive speed or have asked the driver to stop and allow him to leave the automobile. Whether a warning protest or request would have been heeded by the defendant is questioned, but whatever the effect would have been, as the danger was obvious, it was the duty of Sharp at least to remonstrate against the dangerous speed or insist that he be allowed to leave the car if there was time to do so after the danger became apparent."

In *White* v. *Portland, etc., Co.* (1917), 84 Ore. 643, 165 Pac. 1005, the court says:

"It is plain, however, that an invited guest is not to be supine and inert as mere freight. Accepting the hospitality of his friend does not excuse him from the duty of acting for his own safety as a reasonably prudent person would under like conditions."

In *Atwood* v. *Utah, etc. Co.* (1914), 44 Utah 366, 140 Pac. 137, the court says:

"Of course, everyone who may be riding in a vehicle, whether as passanger, invitee, or otherwise, must always exercise ordinary care and prudence to avoid injury to himself, and to that end, in case of imminent danger, must leave the vehicle in case such a course is practical and necessary to avoid injury."

From these authorities it seems to be well settled that it was the duty of appellant, riding as the guest of one whom he had discovered in ample time to be careless, or reckless, to use due care for his own safety, and that in the exercise of such care, it was his duty, when his protests were not being heeded, to leave the car. This he failed to do though he had repeated opportunities, and even returned to the car at least two times when he was out of it. The facts are before us, admitted and uncontradicted, and from them we should hold that appellant was guilty of contributory negligence as a matter of law. Certainly, from the facts in evidence as above set out, the jury reached a right result, and when it has done so, the rule that erroneous instructions will not be a cause for

reversal if the verdict is right upon the evidence is too well established to require citation of authorities. The neighborly kindness of owners of automobiles in inviting as their guests to ride with them, those who are less fortunate, is a matter of common commendatory remark. But no driver of an automobile however careful he may intend to be, always handles his car in the best and safest way, and if ungrateful guests are to be encouraged by the courts to hale those who have tried to be kind to them into court to answer before a jury for accidents which may or may not be the result of some act of negligence, owners of cars may well choose with care those upon whom they will bestow such hospitalities. When a jury under circumstances such as in this case find that such a guest has no right of recovery, there should be much hesitation on the part of the court to set aside the verdict.

As I view the facts in this case, the conduct of appellant was not so reprehensible as to justify settling, at his expense, a doubtful proposition of law, if it can be avoided, and I think it can.

DISSENTING OPINION ON PETITION FOR REHEARING.

NICHOLS, C. J.—In my original dissenting opinion, I gave no attention to the questioned instructions to the discussion of which the opinion of the majority of the court, both original and on rehearing, has been chiefly devoted, believing then, as I do now, that under the uncontradicted evidence of appellant himself a right result was reached, and that there should be no reversal even if the challenged instructions constituted intervening error. I conclude, however, that these instructions may well have brief consideration in the light of Indiana authorities.

It is averred in each paragraph of the complaint that appellee "contemplated and intended to drive said automobile from Indianapolis, Indiana, to Danville, Illinois, and on said date invited the plaintiff herein to become his

guest and ride in defendant's automobile with him on said trip, and plaintiff then and there accepted said invitation and became the guest of said defendant, as a passenger in said automobile."

There are no other averments as to how it happened that appellant was in appellee's automobile. There is no suggestion that he was there by mere consent or permission. If appellant occupied appellee's automobile only by the consent or permission of appellee he was simply a licensee, but if he occupied it by the invitation of appellee he was an invited guest. This court has repeatedly recognized that the duty owing to an invited guest is not the same as that owing to a licensee. In *Thistlewaite* v. *Heck* (1921), 75 Ind. App. 359, 128 N. E. 611, the opinion being written by McMahan, J., the writer of the majority opinion in this case, the distinction is recognized, the court saying that "mere permission without more, involves 'leave or license,' but bestows no right and care." Other authorities to the same effect are *Pittsburgh, etc., R. Co.* v. *Hall* (1910), 46 Ind. App. 219, 90 N. E. 498; *Chicago, etc., E. Co.* v. *Martin* (1903), 31 Ind. App. 308, 65 N. E. 591; *Cleveland, etc., Co.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785; *Thiele* v. *McManus* (1891), 3 Ind. App. 132, 28 N. E. 327; *The Evansville, etc., R. Co.* v. *Griffin* (1884), 100 Ind. 221; *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, 16 N. E. 121.

As a practical definition for everyday use, mere permission is only consent, and mere consent is only permission, and "consent" without any qualification whatever is merely "consent." Appellant's tendered instruction 5, the refusal of which is made one of the grounds for reversal, embraced not only the contingency that appellant was occupying the automobile by invitation, which was all that the issues presented, but, alternatively, by consent which was beyond the issues. The instruction was not confined to the invited guest theory of the com-

plaint, and therefore the court committed no error in refusing it.

*H. H. Woodsmall, Inc.*, v. *Steele* (1924), 82 Ind. App. 58, 141 N. E. 246; *Hatten* v. *Hedell Furniture Factory* (1920), 72 Ind. App. 357, 125 N. E. 797; *Baltimore, etc., R. Co.* v. *Peck* (1913), 53 Ind. App. 281, 101 N. E. 674; *Domestic Black Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675; *Indiana Railway Co.* v. *Mauer* (1903), 160 Ind. 25, 66 N. E. 156.

The last case cited serves to illustrate the principle. The sole allegation of negligence in the complaint therein was the untimely starting of a street car before plaintiff had time to alight, and it was held that an instruction that if defendant's employee failed to assist plaintiff in leaving the car, defendant would be guilty of negligence, was error, though evidence as to such fact was received at the trial without objection. The effect of the fourth instruction given by the court is that if appellant was not an invited guest, he can not recover under the issues, and even if it be conceded that the court has not well stated the law as to liability where the injured party was riding at his own request and by sufferance, or without objection, the error was harmless for appellant under the issues can recover only if he was an invited guest. But, if it be conceded that the court committed error in refusing appellant's fifth instruction and in giving appellee's fourth, under the facts in this case as detailed by appellant himself, and as set out in the original dissenting opinion, a right result was reached, and the judgment of the trial court ought not to be reversed.

The controlling principle that should affirm the judgment, as set forth in the original dissenting opinion, has long been the law of this state. In *Jonesboro, etc., Turnpike Co.* v. *Baldwin* (1877), 57 Ind. 86, the court says: "If there is any proposition thoroughly established as a general rule it is this, that a party can not recover com-

pensation for an injury, which, by the exercise of reasonable care, he could have avoided. Controversy is at an end upon this proposition."

In *The Town of Gosport* v. *Evans* (1887), 112 Ind. 133, 13 N. E. 256, the court says: "Where there is danger and the peril is known, whoever encounters it voluntarily and unnecessarily can not be regarded as exercising ordinary prudence, and therefore does so at his own risk."

In *Morrison* v. *Board* (1889), 116 Ind. 431, 19 N. E. 316, the court says: "The law accounts it negligence for one, unless under compulsion, to cast himself upon a known peril, from which a prudent person might reasonably anticipate injury."

In *Pittsburgh, etc., R. Co.* v. *Hall* (1910), 46 Ind. App. 219, 90 N. E. 498, 91 N. E. 743, the court says: "It is well settled that one who voluntarily assumes a dangerous position, after notice or knowledge of the danger in ample time to secure a safe place, can not recover for an injury by reason of being in the dangerous position thus assumed."

In *Ackerman* v. *Pere Marquette R. Co.* (1915), 58 Ind. App. 212, 108 N. E. 144, the court says: "A person who is placed in a dangerous position must exercise his reasoning faculties, and do all that a careful prudent man would do under the circumstances to avoid injury. The greater the danger the greater the precaution that should be taken."

In *City of Vincennes* v. *Thuis* (1902), 28 Ind. App. 523, 63 N. E. 315, the court says: "But, notwithstanding this rule, it is as much the duty of the guest to use reasonable care and judgment to learn of and avoid danger as it is the duty of the driver."

It thus appears that the rule that should affirm the judgment herein, and that controls in other states, is the well established law of Indiana. One can not submit himself to known peril where he has opportunity to escape,

without assuming the risk. From the evidence of appellant as set out in the original dissenting opinion, can it be said that appellant did not encounter a known peril from which time after time he could have escaped, and that, therefore, in the light of all of these authorities he did not assume the risk, and that he should recover? The question answers itself.

Even though there were intervening errors by way of instructions or otherwise, it clearly appears under the evidence of appellant himself that a right result was reached, and there should be no reversal.

The case of *Indianapolis, etc., R. Co.* v. *Schomberg* (1905), 164 Ind. 111, 72 N. E. 1041, thus states the rule that should govern in this appeal: "If we had any reason to believe, from an examination of the record, that the inaccuracies in the instructions in question were influential in bringing about a wrong result, or were probably prejudicial to appellant, we would not hesitate to order a reversal of the judgment. But what may be said to be uncontradicted evidence in the case clearly establishes that the verdict of the jury is right, and that the merits of the cause have been fairly tried and determined. It has been frequently affirmed by this court that the giving of an inaccurate instruction, which, under the facts in the case, can not be said to have prejudiced the complaining party in his substantial rights, will not justify a reversal of the judgment. Neither will an erroneous instruction warrant a reversal where it appears that the judgment upon the evidence is a correct result. In fact, Sec. 670 Burns 1901, Sec. 658 R. S. 1881, forbids a reversal in cases 'where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below.' The decisions in which this rule is sustained and enforced are numerous, and a reference to all is not necessary."

I am firmly convinced that this case should be affirmed.